[No. 7895.   Department Two.   July 15, 1909.]

CHARLES PASSOW & SONS, *Respondent*, v. KIRKWOOD DISTILLERY COMPANY, *Appellant.*[1]

EVIDENCE — PAROL EVIDENCE TO VARY WRITING — CONTRACTS.   A written contract for the sale of goods on consignment providing the compensation for the services of the consignee shall be the excess of the selling price over the prices fixed by the consignor, cannot be varied by parol evidence that the consignors agreed to fix a price ten per cent less than the regular list price; when the course of dealing showed that such oral agreement had not been omitted from the written contract by inadvertence or mistake.

SAME.   A contract for the sale on consignment of such goods as the consignors shall see fit to send to the consignee at Spokane, Washington, cannot be varied by parol evidence that the consignees were to have the exclusive agency for the sale of the consignor's goods in the states of Idaho and Washington.

SAME.   Where a bill of goods was ordered prior to the parties' entering into a written contract to sell goods on consignment, but was not delivered until thereafter, oral evidence that the parties agreed that the bill be paid for under the terms of the contract does not vary the terms of the contract, and is admissible.

TROVER AND CONVERSION—FACTORS—REFUSAL TO RETURN GOODS HELD ON CONSIGNMENT.   Where the consignee refuses to return unsold goods, held for sale on consignment, "free on board cars consigned to the consignor" as required by the contract, the latter may treat such refusal as a conversion and recover the value.

[1]Reported in 103 Pac. 34.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered September 24, 1908, upon the verdict of a jury rendered in favor of the plaintiff, after a trial on the merits, in an action on contract. Affirmed.

*Cohn, Delameter & Blake* and *Belden & Losey*, for appellant.

*Samuel R. Stern*, for respondent.

Rudkin, C. J.—This action was instituted to recover the value or the contract price of certain goods consigned by the plaintiff to the defendant. The plaintiff had judgment in accordance with the prayer of its complaint, and the defendant has appealed.

Inasmuch as the principal assignments of error are based on the rulings of the court admitting or excluding testimony under the written contract between the parties, we deem it necessary to set the contract forth at length in this opinion:

"This Indenture, made and entered into this 1st day of February, A. D. 1907, by and between Louis A. Passow and Henry E. Passow of Chicago, County of Cook, State of Illinois, parties of the first part, and the Kirkwood Distillery Co., a corporation doing business at Spokane, County of Spokane, State of Washington, parties of the second part, Witnesseth:

"That the said parties of the first part shall send and forward to the said parties of the second part at Spokane, Wash., to be received on consignment by the parties of the second part, such saloon fixtures, billiard and pool tables and other goods manufactured by the party of the first part as the said parties of the first part shall see proper. The party of the second part is to receive for their compensation, for their services in selling and disposing of such goods as may be forwarded and consigned to them, under the terms of this agreement, the excess of the amount which shall be received for such goods as sold by them over and above the prices fixed by the said parties of the first part, in forwarding and consigning goods as aforesaid.

"It is further understood and agreed that the business shall be carried on by the said parties of the second part, under the name of the said first parties and that all sales of goods made by the second parties shall be made in the name of the first parties, and that the title to all goods so forwarded and consigned to the second parties by the first parties, shall be and remain in said first parties' name.

"It is further understood and agreed that the authority of the said second parties shall be and is hereby limited to that of mere sales agent of and for the first parties in selling the aforesaid goods, and that the said second parties shall have no authority whatever to bind said first parties as such sales agent and have no authority to contract or incur any indebtedness or obligation of any kind whatever of the said first parties.

"It is further agreed that the second parties shall at all times keep at his own expense all goods in their possession which may be forwarded and consigned to them under this contract insured in their own name and for the benefit of the first parties in some reliable, solvent insurance company or companies to be approved by the said first parties in an amount equal to at least to the price fixed aforesaid by the first parties and shall deliver all policies of insurance upon said goods to the first parties immediately upon receiving same.

"It is further understood and agreed that the said parties of the second part shall pay all freight charges upon said goods so consigned to them and storage thereon, if any, and all rents which may occur for the use of the rooms in carrying on the business, and other expenses of every kind, name and description incurred on the account of or in connection with the conduct of the business.

"It is further mutually understood, covenanted and agreed by and between the parties hereto that if at any time any of the said goods as aforesaid consigned to the parties of the second part by the parties of the first part shall be seized upon attachment, levy or other process or in any manner taken possession of or claimed by any officer or person claiming the same in hostility to the rights and title of the parties of the first part, then and in that case the parties of the first part shall at its option have the right to take and demand immediate possession as against the parties of the second part, and any and all persons whomsoever.

"It is further agreed that no goods shall be sold by the second parties at prices less than that fixed by the first parties in consigning such goods and that in all cases where sales are made on credit, at least one-third of the purchase price shall be paid by the purchaser in cash at the time of making sale, and the title of all goods sold on credit shall be and remain in the said first parties until fully paid for by the purchaser, and that a conditional sale instrument reserving title in the said first parties purchasing the goods and by the second parties thereto, which conditional sale shall state the terms and conditions of the sale and shall be filed in the office of the County Auditor or Recorder, as the case may be, in which the property is situated as prescribed by the laws of the state (if any such provision exists therein), in which the property may be situated, which conditional sale contract shall provide that the balance of the purchase price of goods sold shall be paid in at least ten equal monthly payments.

"It is further understood and agreed that where the parties of the second part elect to sell on time any of the goods or chattels of the first parties and receiving less than one-third cash payment, that the parties of the second part are to remit to the parties of the first part sufficient sum to cover one-third of the value of the goods at the consigned price. It is also agreed that copies of all contracts, together with all papers are to be sent to the office of the parties of the first part and where a series of notes are taken for the balance due, the parties of the first part are to retain sufficient notes to cover the other two-thirds due on the goods sold, retaining the first and every alternating note and the remaining notes are to be sent to the parties of the second part as their compensation. Where a cash sale is made the parties of the second part are to receive full commission at the time settlement is made in cash.

"It is further agreed that all conditional sales and contracts and instruments in connection with such sales, shall be subject to the approval of the first parties of this contract, unless otherwise instructed in writing, and that the second parties shall pay the recording fees for all such instruments and any other expense attendant thereto.

"It is further agreed that on all sales on which a loss occurs, by fire, failure, etc., of the purchaser, the second

party agrees to pay the first party the amount of such loss to the extent of the consigned price.

"It is further agreed that the party of the second part is to make prompt reports to the parties of the first part of all sales of consigned goods and make prompt remittance of all moneys received through cash or time sales.

"It is further agreed and understood that the second parties shall not sell, handle or manufacture any line of goods that will come in competition with the goods manufactured by the first parties, such saloon fixtures, pool and billiard tables, bowling alleys, etc., designs of which are illustrated in the first parties' catalogues and advertising matter, during the life of this contract, without the written permission of the parties of the first part.

"It is further mutually understood and agreed that this contract may be terminated by either party hereto by giving 90 days' written notice to the other of the intention to terminate the same, and that immediately upon the termination of this contract the said parties of the second part shall and does hereby agree to deliver all of its goods then on hand free on board cars at Chicago, Ill., consigned to the parties of the first part at Chicago, Ill. The parties of the first part, however, at its own option, elect to receive such goods from the parties of the second part at Spokane, Washington, instead of having them shipped to it at Chicago.

"It is further understood and agreed that on the termination of this contract, the second parties will turn over all the moneys in their hands and also all contracts, papers and documents of every kind and description, in connection with the business, or concerning the sales of goods, to the first parties and to pay to the first parties any and all damages which the first parties may have suffered or sustained on account of damage or injury to the goods while in possession of the second parties.

"It is further understood and agreed that the second parties shall furnish the first parties with a bond, subject to the approval of the first parties, to insure the fulfillment of the obligations and conditions of this contract by the second parties."

The answer of the appellant contained numerous affirmative defenses wherein it sought to vary and modify the terms of the written contract, and the exclusion of testi-

mony tending to establish these defenses forms the basis of several of the assignments of error.

(1)   The answer alleged that the parties to the written contract agreed that the price of the goods to be consigned under it should be ten per cent less than the regular list price then in force and published and distributed by the respondent, and that such agreement was omitted from the written contract through accident and mistake.   The contract itself provided that the appellant was, "To receive for their compensation, for their services in selling and disposing of such goods as may be forwarded and consigned to them, under the terms of this agreement, the excess of the amount which shall be received for such goods as sold by them over and above the prices fixed by the said parties of the first part, in forwarding and consigning goods as aforesaid."   The course of dealing between the parties under the written contract and under an earlier contract of similar import shows conclusively that the agreement set forth in the answer was not omitted from the written contract by accident or mistake, and inasmuch as the offered testimony tended to vary and contradict the written contract the objection to its introduction was properly sustained.

(2)   The answer further alleged that it was agreed between the parties that the appellant should have the exclusive agency for the sale of the respondent's goods during the life of the contract for the territory of Washington and Idaho, and that the respondent's goods should be sold in that territory only through the agency of the appellant, and damages were claimed for the violation of this agreement.   The written contract provided that the respondent should "Send and forward to the said parties of the second part at Spokane, Wash., to be received on consignment by the parties of the second part, such saloon fixtures, billiard and pool tables and other goods manufactured by the party of the first part as the said parties of the first part shall see proper."   This defense tended to vary and contradict

the terms of the written contract and evidence offered to sustain it was properly rejected. What we have said in reference to these two defenses applies with equal force to the third.

(3) It appears from the testimony that a certain bill of goods amounting to the sum of $2,252.06 was ordered before the written contract was entered into, but was not consigned or delivered until after the signing and delivery of the written contract. Oral testimony was offered by the respondent tending to show an agreement between the parties that this bill of goods should be paid for under the terms and conditions of the written contract. The ruling of the court admitting this testimony is assigned as error, and the appellant earnestly insists that the testimony thus received tended to vary and contradict the written contract. Manifestly such is not the case. The oral testimony simply tended to show the terms and conditions upon which goods already ordered were to be paid for, and did not in the slightest degree tend to vary, contradict or add to the writing. The written contract was referred to for the sole purpose of fixing the terms and conditions of payment, but this in no manner changed or affected the written contract itself.

(4) It is further contended that the court erred in permitting a recovery for certain goods consigned to the appellant which were not sold or disposed of. The written contract provided that, upon its termination, the appellant should deliver all goods then on hand free on board the cars consigned to the respondent at Chicago, Illinois. This the appellant failed, neglected and refused to do, and the respondent had a right to treat such refusal as a conversion and to recover the value of the goods.

(5) Error is assigned in the giving and refusing of instructions, but these assignments relate to questions already considered. The foregoing discussion covers the principal assignments of error, and a careful inspection of the

record convinces us that the appeal is without substantial merit. The judgment is therefore affirmed.

DUNBAR, PARKER, MOUNT, and CROW, JJ., concur.