[No. 9207.  Department One.  March 22, 1911.]

J. W. KLEEB, *Plaintiff and Appellant*, v. ANDREW J.
McINTURFF *et al.*, *Defendants and Appellants.*[1]

EVIDENCE—WRITTEN EVIDENCE—VARYING BY PAROL—SALES. When
a bill of sale of a stallion, taken in part payment of land, was merely
collateral to an oral sale of the land, parol evidence is admissible
that the stallion was represented to be a pedigreed horse; since
the bill of sale did not purport to state all the terms of the contract
and does not contradict the same.

SALES—FRAUD—REMEDIES OF BUYER—DAMAGES. Upon discover-
ing misrepresentations as to the pedigree of a stallion, the buyer
may, instead of rescinding, elect to keep the animal and recover his
damages.

SALES—FRAUD—MEASURE OF DAMAGES. The measure of damages
for misrepresentations as to the pedigree of a horse, where the buyer
does not rescind the sale, is the difference between the price paid
and the actual value at the time of the sale.

Cross-appeals from a judgment of the superior court for
Franklin county, Holcomb, J., entered May 3, 1910, upon
findings in favor of the plaintiff, after a trial on the merits
before the court without a jury, in an action for specific
performance. Reversed.

*Chas. E. Miller* and *Herman Murray*, for plaintiff.

*H. B. Noland* and *Moulton & Henderson*, for defendants.

MOUNT, J.—This action was brought by the plaintiff to
compel specific performance of a contract of sale of real es-
tate situate in Franklin county. A decree was entered in
the court below in accordance with the prayer of the com-
plaint. Subsequently the court modified the judgment so
that neither party was allowed to recover costs from the
other. The defendants have appealed from the decree of
specific performance, and the plaintiff has appealed from the
order refusing to allow him costs.

[1]Reported in 114 Pac. 184.

There is no dispute about the fact that a contract was made. It appears that on May 6, 1908, the defendants were the owners of the land in question, being the southwest quarter of section 28, township 13, north, of range 31 E., W. M., containing 160 acres. On that day the parties entered into an oral agreement, the undisputed facts of which are that the defendants were to sell the land to the plaintiff for the sum of $3,300, payable as follows: $250 cash, the delivery of a certain stallion valued at $1,500, lumber from plaintiff's yard at Mesa in said county to the amount of at least $600, $500 cash to be paid December 1, 1908, and the remainder, $450, to be paid May 1, 1909 the latter two payments to bear interest at the rate of seven per cent and be secured by mortgage on the land. This agreement was made by one N. H. Brown, acting for the plaintiff. After the oral agreement was made, the parties went to the place of business of W. T. Anderson and stated to him the terms of the contract. Mr. Anderson, who was a notary public, thereupon prepared the deed, which was executed by the defendants McInturff and wife. This deed was left with Mr. Anderson to be delivered to the plaintiff when the payments were all made as agreed. Mr. Anderson also prepared a bill of sale of the stallion, which was executed as follows:

"Mesa, Wash., May 6, 1908.

"Know all men by these presents: That J. W. Kleeb for and in consideration of $1,500 to him in hand paid, the receipt of which is hereby acknowledged, do hereby transfer and turn over to A. J. McInturff one stallion named Sampson, and the same is free from all incumbrances.

"J. W. Kleeb, by N. H. Brown."

Thereupon the stallion was delivered to defendants, and the first cash payment—$250—was made, and the plaintiff went into possession of the land. Thereafter in the months of June, July, and August, the plaintiff delivered lumber to the defendants amounting to $759.76, and subsequently made the $500 payment. In the meantime the defendant McInturff

demanded, upon several different occasions, a pedigree of the stallion. This the plaintiff promised to furnish, but never did so. On or about December 8, 1908, the plaintiff tendered to the defendants the sum of $320.37, being the balance due, and demanded his deed, which defendants refused. Thereupon the plaintiff paid the money to Mr. Anderson and demanded the deed from him, which was also refused, for the reason that Mr. McInturff had notified Mr. Anderson not to deliver the deed until he received the pedigree of the stallion. Thereupon this action was brought..

The defendants, for answer to the complaint, alleged, in substance, that, at the time the contract was made, the plaintiff represented that the horse had a pedigree and was registered, and that the registration certificate would be delivered within two weeks from that time; that the horse was a good horse for breeding purposes, and would get with foal seventy-five per cent of the mares served; that the plaintiff had failed to deliver the certificate of registration; that the horse was worthless as a foal getter, and that the defendants had been damaged in the sum of $1,600 thereby, and prayed for a judgment for that amount. The plaintiff denied that such representations were made.

At the trial the principal issue of fact was whether the plaintiff or his agent had represented that the horse was a registered horse. A careful reading of the record convinces us that, at the time of the contract and immediately before it was made, representations were made that the horse was a registered horse, and that the defendants relied upon such representations. It is true the defendant A. J. McInturff testified that Mr. Brown told him, in answer to a question as to the ancestry of the horse, "He said the sire of the horse was a thoroughbred Clyde, and the mammy was half Clydesdale and half German Coach." It is also true that men versed in the pedigree of horses know that a horse of such lineage is not a subject of registration; but it is clearly shown, we think, that defendant McInturff was entirely ig-

norant of this fact.    He testified that he knew that a regis-
tered horse was more valuable than one not registered, but
that he did not know what was required for registration, and
relied wholly upon the representations of Mr. Brown in that
regard.    The trial court refused to find that the plaintiff or
his agent had represented that the horse was a registered
horse and had agreed to deliver the certificate of registration
to the defendants, but instead found "that at the time of the
delivery of the said stallion Sampson by the plaintiff to the
defendant Andrew J. McInturff, the said plaintiff, by his
duly authorized agent executed to said defendant Andrew J.
McInturff, in writing, a formal bill of sale of such stallion,
duly conveying the title and covenanting against incum-
brances, but that said bill of sale contained no other war-
ranties."

It was argued below, and is argued here, that the bill of
sale above set out contained the whole contract in writing,
so far as the stallion is concerned, and that this part of the
contract may not be varied by oral evidence.    Jones on Evi-
dence, p. 571, § 542, and Stevens on Evidence, art. 90, are
cited to support this rule.    The trial court evidently took
this view of the bill of sale, and for that reason refused to
find that the defendants had taken the horse upon the
strength of the representation that the horse was a registered
horse.    It is apparent, in the light of the facts, that the bill
of sale does not undertake to state the terms of the contract.
It was merely collateral to the contract, and evidently given
in pursuance thereof to show that the title of the horse had
passed from Kleeb to the defendants.    The statement that
"the same is free from all incumbrances" was a warranty of
that fact, but the mere fact that the bill of sale was reduced
to writing and was signed by the plaintiff and accepted by
the defendant, did not prevent either party from showing
that it was also agreed that other property was to be delivered
at the same time or subsequently, or that a saddle or
bridle or a pedigree was also to be delivered with the horse.

This is especially true where it is conceded the delivery of the horse was but one of the items of the contract.   It seems clear that in such case oral evidence may be received to show the terms of the contract, where it is admitted that the contract itself is oral.   It follows that. the collateral writing, which does not undertake to state all the terms of the contract, does not control.   *Knowles v. Rogers*, 27 Wash. 211, 67 Pac. 572; *Puget Sound Iron & Steel Works v. Clemmons*, 32 Wash. 36, 72 Pac. 465.   The trial court therefore erred in not finding that the plaintiff agreed to furnish a certificate of registration with the horse.   The cause must be reversed for that reason.

The defendants did not offer to rescind upon discovering that the horse was not a registered one, but seek to retain the horse and recover damages.   We think they may rightfully do this, and that their measure of damages is the difference between $1,500, which they paid for the horse, and the actual value of the horse at the time of the contract. The cause is remanded to the lower court to determine this question, and to enter a decree accordingly.   Appellant will recover his costs in this court.   The costs of the lower court will be adjudged upon final hearing there.

Dunbar, C. J., Parker, Fullerton, and Gose, JJ., concur.

### On Rehearing.

[Decided July 19, 1911.]

Per Curiam.—A rehearing was granted in this case. Upon a reargument, we are satisfied with the conclusion reached upon the former hearing, and the result then announced will stand as the judgment of the court.