[No. 9341. Department One. August 23, 1911.]

INTERSTATE ENGINEERING COMPANY, *Appellant*, v. JOHN F. ARCHER *et al.*, *Respondents.*[1]

SALES—BREACH—DELIVERY — DAMAGES FOR DELAY. Damages by reason of delay in delivering iron sold for the construction of a certain bridge are reasonably within the contemplation of the parties and recoverable, where the seller agreed to ship the iron within thirty days, and knew that certain false work was necessary, which flood stages of the river would sweep away if the bridge was not promptly completed, and the seller failed to furnish the steel for six months, at which time the false work had been swept away.

EVIDENCE—PAROL EVIDENCE TO VARY WRITING—ADMISSIBILITY—INCOMPLETE WRITINGS. Where a letter acknowledges receipt of an order for structural iron, and states the price, kind of material, manner of shipment, and terms of payment, but does not state the quantity of material or when it is to be delivered, the whole contract is not stated, and oral evidence as to the time when the iron was agreed to be delivered is admissible.

EVIDENCE—PRODUCTION OF DOCUMENTS—SUBPOENA DUCES TECUM. A subpoena *duces tecum* requiring the plaintiff and its attorneys to produce all letters and telegrams passing between it and certain agents respecting the sale of the goods in suit, is sufficiently particular to empower the court to compel plaintiff's attorneys, to whom letters were delivered, to produce them.

APPEAL — REVIEW — ESTOPPEL — INVITED ERROR. It cannot be claimed that the trial court's threat of punishment for contempt for refusal to produce papers prejudiced the jury, where the party refused to obey the order of the court in the presence of the jury and did not ask that the jury be excused when inviting the controversy.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered July 6, 1910, upon the verdict of a jury rendered in favor of the defendants, in an action on contract. Affirmed.

*Poindexter & Moore* and *Richard G. Hutchinson* (*O. C. Moore*, of counsel), for appellant.

*Danson & Williams*, for respondents.

[1]Reported in 117 Pac. 470.

Mount, J.—The plaintiff brought this action to recover an alleged balance of $1,048.18, on account of structural iron and steel furnished to defendants upon their order. The complaint alleged that on December 7, 1908, defendants entered into a written agreement for the purchase of iron and steel, as follows:

"Spokane, Wash., December 7, 1908.
"John F. Archer & Co.,
      "City.
      "Gentlemen: We are entering your order today, subject to the approval of the Interstate Engineering Co. of Cleveland, Ohio, for the steel material for the highway bridge at Kamiah, Idaho. This material to be furnished you at a price of $4.33 per hundred f. o. b. Kamiah, Idaho, same to be fabricated and ready for erection, according to B-P's and according to specifications of the American Bridge Co. for light 'C' type of highway bridge. The price quoted is determined as follows: $3.00 per hundred for the fabricated steel material f. o. b. Bedford, Ohio, and $1.33 per hundred freight from Bedford to Kamiah, Idaho. There shall be furnished with this fabricated material enough take-up bolts and rivets for erection in the field. There shall not be a variation in weights between the shop weights of the Interstate Engineering Co. and the weights of the Railroad Company of over 2%. Any variation in freight rate at the time of shipment shall be assumed by consignee. All material to be shipped in full carloads so that same will be figured at carload rates. Terms of payment to be as follows: draft for 80% of the contract price to be made on John F. Archer & Co. through the Spokane and Eastern Trust Co. of Spokane, attached to bill-lading; balance to be in two equal payments of 30 and 60 days each. We are sending you, under separate cover, corrected copy of B-P which you will use in connection with the specifications of the American Bridge Co. for this work.
                    "Yours very truly,
"Accepted Dec. 7, 08.    Wright & Bell, By A. L. Wright.
      "John F. Archer & Co.;"

that in accordance with this contract, plaintiff delivered to defendants 174,698 pounds of steel and iron, which defend-

ants accepted and received; that the total price was $5,240.94, of which defendants paid $4,192.76, leaving a balance due of $1,048.18.

The answer of the defendants admitted that they entered into a contract with the plaintiff prior to the date of the letter above set out, and that the letter was delivered to them on the date it bears; that plaintiff furnished 140,000 pounds of steel and iron for the construction of the bridge referred to; and that defendants paid plaintiff $4,192.76; but denied all the other allegations of the complaint.

And as an affirmative answer and counterclaim, defendants alleged that, on October 7, 1908, they had a contract to construct a bridge across the Clearwater river at Kamiah, Idaho, and plaintiff, knowing that fact, solicited an order from defendants for the iron and steel necessary to construct the said bridge; that defendants and plaintiff, on November 1, 1908, entered into such contract, whereby plaintiff agreed, for the price of three cents per pound, to furnish all the iron and steel bolts and rivets for said bridge, all of such material to be shipped by plaintiff to defendants at Kamiah, Idaho; and that the plaintiff agreed to ship said material within a reasonable time, and not to exceed thirty days after the date of the contract; that plaintiff knew that defendants were engaged in constructing said bridge, and that the iron and steel would be required within six weeks from the date of the contract, and that, unless the material was delivered within said time, defendants would have to suspend work on such bridge; that plaintiff also knew that certain false work was necessary in the bed of the river preparatory to receiving the steel, and that the river reached flood stages in the months of February, March, April, and May of each year, and that unless such iron and steel reached it in time to be put in place before high water, such false work would be carried away and defendants would suffer great loss thereby; that a reasonable time for shipping said steel did not exceed three weeks from the date of the agreement, and that if plain-

tiff had shipped said material within a reasonable time, or within thirty days as it agreed, the bridge would have been completed before high water; that in making the contract, defendants relied wholly upon the promise of the plaintiff to ship said materials within a reasonable time, and not to exceed thirty days; that plaintiff delayed and refused to ship such materials within a reasonable time or within thirty days, and defendants repeatedly urged plaintiff to carry out its contract, and plaintiff promised to do so; but, notwithstanding such promises, failed to ship any of such material until June 29, 1909, when a portion thereof was shipped, and the remainder was shipped several weeks later; that by reason of such delay, the false work placed in the river by defendants was washed away by the flood waters and lost, to defendants' damage in the sum of $4,184.45; that the flood water which caused the damage did not occur until after the defendants could have completed said bridge, if plaintiff had complied with its agreement and furnished said materials within a reasonable time.

The plaintiff demurred to the affirmative matter and cross-complaint, which demurrer was overruled. Plaintiff then filed a reply, denying the new matter set up. Upon these issues, the cause was tried by the court and a jury. A verdict was returned in favor of the defendants for $1,500. After a motion for a new trial was denied, a judgment was entered upon the verdict. Plaintiff has appealed.

It is argued that the court erred in not sustaining the demurrer to the affirmative defense, for the reason that the damages therein alleged were not such as the parties might reasonably have had in contemplation at the time the contract was made. We are of the opinion that the allegation of the answer brings the case within that rule. It is alleged, that the plaintiff knew that the materials were to be used in this particular bridge; that certain false work was necessary preparatory to receiving the iron and steel; that the river reached flood stages at a certain time, and that un-

less the materials agreed to be furnished were put in place before that time, the false work would be carried away. In view of these facts and with notice of them, it is alleged that the plaintiff agreed to deliver the materials within thirty days. They were not so delivered within that· time, and afterwards promises were repeatedly made to ship them. It is apparent that the contract was made and the time fixed for delivery in order to avoid such damages, and that such damages were, we think, in the contemplation of the parties. In the trial of the case the evidence was ample to show that, before making the contract, the defendants discussed the whole situation with·the agents of the plaintiff, and that the parties understood that it was necessary to have the iron and steel within a given time or loss would occur. · In view of this fact, it was stated that· the materials would be shipped at once and delivered within a reasonable time, and not to exceed thirty days. The court did not err, therefore, in overruling the demurrer, or in receiving evidence of damages, occasioned by floods occurring after the expiration of thirty days.

Appellant also argues that the court erred in admitting oral evidence as· to the agreement entered into between plaintiff's agent and the defendants. Evidence was admitted to the effect that the material was to be delivered within a reasonable time, which should not exceed thirty days. It is argued by the appellant that the writing above set out is the final word as to the terms of the agreement, and the testimony fixing the time of delivery of the material is not admissible because it varies the terms of the written argeement. It· is elementary that the terms of a written contract may not be varied or contradicted by parol. It is conceded in this case that this letter was written by Wright & Bell, local agents in Spokane for the plaintiff, and· that the letter was indorsed and accepted by the defendants after the time when the agreement was made authorizing plaintiff to furnish the materials. Defendants also concede that the letter correctly

states the terms of the agreement upon the matters referred to therein. But defendants insist that the original agreement was oral, and that the terms thereof may be proven by parol.

The letter upon its face does not purport to state the whole agreement. It is in the form of a letter from the plaintiff's agent at Spokane, and is addressed to the defendants at the same place. It states: "We are entering your order today subject to the approval of the Interstate Engineering Company of Cleveland, Ohio, for the sale of material for the highway bridge at Kamiah, Idaho." It then states the price, kind of material, manner of shipment, and terms of payment, but it does not state the quantity of material, or when it is to be shipped or delivered. These terms, it would seem, would be necessary to a completed contract. It is plain that an order had been previously given to these agents for the material. This order is as much a part of the contract as the letter quoted. When the defendants received the letter and indorsed their acceptance thereon, they thereby agreed to the terms of the contract as expressed in the letter and were bound thereby. They could not thereafter be heard to orally dispute or vary any of the terms therein stated. But it does not appear upon the face of the letter that it purports to contain the whole contract. Where it appears that only a part of the contract is in writing, the part not in writing may be proved by parol, in so far as it is not inconsistent with the written portion. 17 Cyc. 746-7; Wigmore, Evidence, § 2430. It was proper, therefore, for the court to receive oral evidence as to the time when the materials were agreed to be delivered. It follows that the defendants might show the damages which naturally followed from such delay, when it was proven that plaintiff agreed to furnish the materials within the specified time, with notice and knowledge of the conditions and the purposes for which the materials were ordered.

Appellant argues that the court erred in requiring it to

produce certain letters and telegrams at the trial. It appears that, prior to the trial, defendants caused a subpoena *duces tecum* to be served upon the plaintiff and its attorneys, which subpoena required the plaintiff and its attorneys to produce on the trial "all letters and telegrams and copies of letters and telegrams passing between Wright & Bell, or either member of said firm, and the Interstate Engineering Company, or either member of said firm, and the Interstate Engineering Company or any of its officers, concerning the furnishing of steel to the defendants." Certain letters and telegrams relating to the contract were turned over by plaintiff to its attorneys and by them brought into court. But counsel for plaintiff refused to deliver these letters and telegrams. The court thereupon required counsel, under threat of punishment for contempt, to deliver the letters and telegrams, and they were put in evidence.

Appellant argues, that the subpoena was too general in its terms to require the production of any particular letter or telegram; that the letters were in possession of counsel, having been delivered by the plaintiff, and were therefore privileged; also that the controversy, occurring in the presence of the jury, was prejudicial to the plaintiff. There is no merit in these contentions. The subpoena was particular enough so that it was readily understood what documents were wanted, and these documents were actually brought into court. Being there and material to the case, the court certainly had power to require them to be produced and, if necessary, punish counsel for refusal to obey such order. This position seems too plain to justify further discussion. If the position of counsel in refusing to surrender the documents was prejudicial before the jury, he may not now complain, because he invited the threat of the court in the presence and hearing of the jury. He did not ask the court to withdraw the jury while the matter was being discussed, when he must have known that some controversy would arise

upon his refusal to surrender the papers. There was no error in the court's rulings upon this question.

The appellant insists, lastly, that the steel was furnished within the time agreed upon. This was a question for the jury, and evidently was decided adversely to plaintiff.

We find no error in the record, and the judgment is therefore affirmed.

DUNBAR, C. J., FULLERTON, and GOSE, JJ., concur.