[No. 16404.  Department One.  September 8, 1921.]

BREWSTER DISTRICT UNIT, *Respondent*, v. L. E. MONROE
*et al., Appellants.*[1]

CONTRACTS (4)—MUTUALITY.  A contract whereby one party
agrees to haul and warehouse fruit grown by the other party is void
for lack of mutuality, where the grower is not by its terms bound to
deliver any given quantity of fruit.

EVIDENCE (168.)—PAROL TO VARY WRITING—PRIOR OR CONTEMPO-
RANEOUS AGREEMENTS.  Where a written contract for the hauling and
storage of fruit is void for want of mutuality, oral evidence is in-
admissible to show that an agreement was made, at or before the
time of the writing, that the grower bound himself to deliver all the
fruit of the crop for a given year.

Appeal from a judgment of the superior court for
Okanogan county, Neal, J., entered September 20, 1920,
in favor of the plaintiff, upon sustaining a demurrer
to the answer, in an action on contract, tried to the
court.  Affirmed.

*Corbin & Easton* and *W. H. Hodge,* for appellants.

*Johnson & O'Connor,* for respondent.

HOLCOMB, J.—In its complaint against appellants, re-
spondent, Brewster District Unit, a corporation, de-
manded judgment for the value of 12,000 apple box
shooks, goods, wares and merchandise furnished and
services rendered, of the total value of $5,470.48, during
the year 1919, upon which payments are admitted in the
sum of $1,204.31, leaving a balance due, as claimed, of
$4,166.17, with interest on the sum of $1,980 from
July 15, 1919, at the rate of six per cent per annum,
and on $2,186.17 from November 30, 1919, at the rate
of six per cent per annum.

Appellants answered and admitted that respondent
sold and delivered to them approximately 11,000 apple

[1]Reported in 200 Pac. 841.

box shooks, admitted the purchase of certain mer-
chandise during the season of 1919, and that certain
services were rendered by respondent to the appellants
in warehousing and hauling part of appellants' apple
crop for the season of 1919.

Appellants also pleaded three payments on account,
namely: $1,000, $227.58, and on April 27, 1920, after
the commencement of the action, a third payment of
$2,530.97, or a total of $3,758.55.

Appellants further pleaded an affirmative defense
and counterclaim growing out of a certain written con-
tract entered into between the respondent, Brewster
District Unit, and appellants, Monroe Brothers, dated
September 18, 1919, wherein respondent was to furnish
services in warehousing and hauling fruit of the ap-
pellants, and claimed a breach of the contract. By
reason of the breach and failure to perform on the
part of the respondent, appellants alleged damages
in the sum of $1,735,20, minus any balance that might
be due the respondent for services rendered and mer-
chandise sold and delivered.

The contract is herewith set forth as follows:

"Brewster District Unit warehouse and loading con-
tract.

"This agreement, entered into this eighteenth day of
September, 1919, by and between Monroe Bros., and of
the county of Douglas, state of Washington, whose
post office address is Brewster, Wash., hereinafter
called the grower, the party of the first part, and the
Brewster Union, hereinafter called the Unit, party of
the second part, witnesseth:

"The period of this contract shall be for the year
1919.

"The Unit agrees to maintain and provide ware-
house facilities for the warehousing and loading of
the grower's fruit at the Unit Warehouse, at Brewster,
Wash.

"The grower shall have all fruit delivered packed in plainly marked boxes with the grade, variety and sizes stamped on in regular form for labeling.

"The grower or shipper agrees to furnish all labels required put on boxes of apples so warehoused, also to give the Unit written instructions twenty-four hours before loading cars.

"The grower further agrees to pay the Unit the sum of (7½) seven and one-half cents per packed box of apples for all apples delivered to the Unit.

"The Unit agrees to furnish grower warehouse receipts, label, load, brace and manifest all fruit warehoused with Unit by said grower.

"The grower further agrees to pay the Unit the sum of 6c per packed box of apples for hauling fruit from ranch to warehouse.

"The Unit agrees to furnish trucks to move said fruit within twelve hours after notified by grower on phone and to pay all ferry charges. The Unit to be relieved of this hauling clause if ferry refuses to cross them."

The agreement was signed by the parties.

The respondent demurred to the affirmative answer and counterclaim and the demurrer was sustained, with permission to plead anew. An amended affirmative answer and counterclaim was filed and respondent demurred, which demurrer was sustained.

Subsequently, on the 27th day of September, 1920, a stipulation was entered into by and between Johnson & O'Connor, attorneys for respondent herein, and Corbin & Easton and W. C. Gresham, attorneys for appellants herein, whereby it was agreed that R. C. Monroe is not a member of the partnership composed of the appellants L. E. Monroe and V. B. Monroe, trading under the firm name and style of Monroe Brothers.

It was further stipulated and agreed that the appellants L. E. Monroe and V. B. Monroe are indebted

to the respondent in the sum of $1,635.20, together
with interest at the rate of six per cent per annum on
the following amounts: On $1,980 from July 15, 1919,
to May 1, 1920; on $509.03 from December 1, 1919, to
May 1, 1920, and on $1,635.20 from December 1, 1919,
to the date of the judgment herein, on account of
goods, wares and merchandise and services furnished
to appellants by the respondent.

The stipulation also provided that appellants do not
waive any rights they may have under and by virtue
of their affirmative answer and counterclaim made and
filed in this action, and that the indebtedness of ap-
pellants to the respondent should not in any manner
be taken as a waiver of any rights of appellants which
they may have by virtue of their affirmative defense
and counterclaim.

On this stipulation, an order was entered sustaining
the demurrer to the affirmative defense and counter-
claim in appellants' amended answer, and making cer-
tain findings, which were that judgment be entered
in this cause in favor of respondent without further
proof, on account of appellants' failure and refusal
to further plead in the action, to which order of the
court, filed September 27, 1920, appellants excepted.

On the same date, the court entered judgment in
favor of respondent and against the appellants in the
sum of $1,635.20, together with interest at the rate of
six per cent per annum on the amounts as stipulated,
the interest totaling the sum of $184.98, and for re-
spondent's costs and disbursements incurred in the
action.

The pleadings, records and files compose the entire
record on which the appeal is based.

The amended answer alleged some supplemental
oral agreements and circumstances surrounding the

making of the written contract, apparently intended to furnish the basis of an independent consideration and inducements. It alleges the custom of fruit growers to make warehousing arrangements, and the warehousing concerns to make contracts for warehousing; that the parties, with knowledge of those customs, estimated the size of appellants' crop and one paragraph of the amended answer alleged that:

"At the time of entering into said agreement the parties especially understood that the contract was concerning all fruit harvested from the defendants' orchards, and all of the parties knew the customs concerning said agreements and knew of the necessity of making proper provisions prior to the time said fruit season began, which was the latter part of September, 1919."

The trial court held that the contract could not be enforced because of its lack of mutuality.

Appellants contend that the contract pleaded constitutes a bilateral contract, upon mutual considerations. They assert that both appellants and respondent agreed to perform certain acts; that appellants bound themselves to pay for certain services; that appellants suffered a restriction of the right of contract with others for the warehousing and hauling of their fruit for the year 1919; that respondent obtained valuable rights in that it secured to itself the advantage of knowing that it could depend upon handling the fruit of appellants, the facilities of respondent being limited; that respondent also obtained the promise of payments; that there was a part performance and a part payment; that each party elected to act on the contract until a breach by respondent occurred. Appellants themselves, in analyzing the contract, put this query: "What fruit was required to be delivered

under the contract with appellants, the growers?
What part?'' and answered thereto, ''part or all.''

It would have been easy to have inserted in the
contract a provision that appellants agreed to deliver
all the fruit grown by them to respondent's ware-
house at Brewster; or that they would deliver a certain
number of boxes, or a certain portion of the appel-
lants' crop of fruit for 1919.

There is nothing in the contract to that effect. All
that appellants agreed to do, apparently they did do.
Appellants agreed to have all fruit that was delivered
packed in plainly marked boxes, with the grade, variety
and sizes stamped thereon; they agreed to furnish the
labels required to put on the boxes so delivered and
warehoused; they agreed to give the warehouse written
instructions twenty-four hours before loading cars
with fruit so delivered; they agreed to pay the ware-
houseman seven and one-half cents per packed box
for all apples so delivered to the warehouseman; they
agreed to pay the warehouseman six cents per packed
box for hauling apples so delivered and warehoused,
from the orchard to the warehouse. All these things
could be done with a very limited quantity of appel-
lants' fruit grown during the year 1919, and fully
comply with the contract.

On the other hand, as a test of the mutuality, what
could respondent, if the situation were reversed, re-
quire appellants to do? There was nothing in this
contract preventing the appellants from making other
contracts with other warehousemen. Giving the con-
tract the benefit of every doubt in its construction,
when the growers delivered any part of the crop of
fruit grown by them in 1919 to the warehouse, they
fully performed their part of the contract. If they
failed to deliver any part of their crop of fruit for

1919, it is difficult to see what remedy respondent would have against them. Nor do the allegations as to certain oral agreements and understandings in any way assist appellants in sustaining the contract. Evidence of an oral agreement made at the time or before the writing was made, to convert the contract into an obligation to deliver all of the fruit of appellants' 1919 crop, would be to vary and contradict a writing, and on this ground is incompetent. That is the uniform rule in this state, except for fraud, accident or mistake, and we need cite no cases to that effect. As was observed by Judge Lurton in *Dennis v. Slyfield,* 117 Fed. 474:

"Here both parties have signed the contract . . . It purports to be the agreement between the parties and speaks conclusively the conclusion to which the parties to it have arrived. The oral promise, if any, related to the subject upon which the written contract spoke and varied the terms of the writing in a most important particular. It was therefore upon a very elementary principle not competent to contradict the writing by an oral agreement contemporaneous with, or antecedent to it. All the negotiations prior to the writing are, in the absence of fraud, accident, or mistake, merged into the written agreement and it is not competent to prove such negotiations for the purpose of adding a term which would vary or contradict the conclusion arrived at as shown by the writing."

In the case above cited, there was a contract between the parties which recited that the second parties thereto were "desirous to ship by vessel certain lots of hard wood lumber," and by which the first party agreed to carry on its vessels, "any and all of this lumber as may be desired by the party of the second part," and this was held by Judge Lurton to be void for want of mutuality.

Our cases of *Mowbray-Pearson Co. v. Stanton Co.,* 109 Wash. 601, 187 Pac. 370, 190 Pac. 330; *Brown v. Brew,* 99 Wash. 560, 169 Pac. 992; *Taylor v. Ewing,* 74 Wash. 214, 132 Pac. 1009; *Herrin v. Scandinavian-American Bank,* 65 Wash. 569, 118 Pac. 648; *Spokane Canal Co. v. Coffman,* 61 Wash. 357, 112 Pac. 383; *Parks v. Elmore,* 59 Wash. 584, 110 Pac. 381; *Nelson v. Brassington,* 64 Wash. 180, 116 Pac. 629, Ann. Cas. 1913A 289, and *Jennings v. Dexter Horton Co.,* 43 Wash. 301, 86 Pac. 576, are all applicable to this contract. The *Mowbray - Pearson Co.* case is very analogous to this case. In that case we said:

"Turning to the writing under consideration, we can find in it no obligation assumed by the respondent. By its terms the appellant promised, in consideration of the respondent's soliciting and delivering ice within a certain described district, it would sell the respondent sufficient ice at a named price to supply the district, but the respondent promised nothing. It neither promised to solicit and deliver ice in the district, nor promised, in case it did do so, to buy the ice it should sell from the appellant. The writing itself is therefore wholly unilateral. The promise is entirely upon the one side without any corresponding promise on the other."

In that case *Thayer v. Burchard,* 99 Mass. 508, was cited. That was a case where the defendants, operating a railroad, wrote to the plaintiffs, flour and grain dealers, that it would transport flour and grain between certain named places at $4 per ton, "this rate to continue in force until the close of navigation, unless notice to the contrary." The plaintiffs answered: "We accept the proposition." This was held to constitute a mere offer on the part of the plaintiffs and not an obligatory contract, because plaintiffs did not assume any obligation to furnish flour or grain for

transportation, being at liberty to buy flour or grain, or not, as they chose; or, if they did buy any, to transport it on a road other than that of defendant if they saw fit, and hence were not subject to an action for a breach of contract. This contract, it is true, obligates appellants to do certain things if they did deliver any fruit to respondent's warehouse. They did deliver fruit, and presumably (for there is nothing to the contrary shown) performed the things which they agreed to do in their contract. The same situation existed in the *Mowbray-Pearson Co.* case, *supra*. It was performed during one year by both parties, and performance refused the next year by one of them. Another similar case is that of *Missouri K. & T. R. Co. v. Bagley*, 60 Kan. 424, 56 Pac. 759, where the parties entered into a contract with the railway company wherein it was agreed that, if the parties would accept certain offers received by them from persons in Mexico for the purchase of corn, the railway company would transport the same from Mexico to Laredo, a point on the Mexican border, for a definite time, at a stipulated rate per hundred pounds. The quantity of corn to be purchased was about 7,500,000 pounds. The corn was purchased and something more than 3,100,000 pounds were shipped over the railway, and something more than 4,300,000 pounds remained, which the railway company refused to carry on the contract. The court held that the contract was not binding upon the railway company for want of mutuality, notwithstanding it had been nearly half performed, because the buyers of the corn were not obligated to ship over the line of railway.

We therefore conclude that the contract in question was void for lack of mutuality, notwithstanding it was partly performed, and the trial court was correct in

sustaining the demurrer and granting the judgment. Judgment affirmed.

PARKER, C. J., FULLERTON, and BRIDGES, JJ., concur.