[No. 22474. *En Banc.* December 1, 1930.]

P. S. WICK COMPANY, *Appellant,* v. MARGARET J. DU-BARRY *et al., Respondents.*[1]

[1] Reported in 293 Pac. 447.

*Shank, Belt, Fairbrook & Rode,* for appellant.

*Tucker & Tucker* and *Hovey & Anderson,* for respondents.

Holcomb, J.—This action was brought by appellant for an accounting, and to compel the payment by respondents of collections they had made on pianos sold which they had refused to remit to appellant.

Respondents cross-complained for damages for breach of an alleged oral contract for the exclusive agency for appellant's pianos in the state of Washington, which they alleged was made at the time a written contract was made, which written contract and which oral contract they alleged were also orally modified to apply only to western Washington with the addition of the territory around Ellensburg, Washington. Respondents also alleged a custom for an exclusive agency.

Appellants denied the existence of any agreement for an exclusive agency and the existence of any custom.

In their affirmative answer and cross-complaint, respondents claimed damages by reason of the alleged violation of their contract by appellant in the total sum of $210,000. The trial court, after a trial without a jury, and after finding that appellant had breached its contract with respondents, found that respondents had been damaged by the wrongful acts of appellant "in at at least the sum of fifteen thousand dollars," and awarded judgment in favor of respondents in that sum.

These parties entered into a written contract, which is as follows:

## "Consignment Contract

"This Consignment Contract made and entered into in duplicate at St. Paul, Minnesota, by and between P. S. Wick Company, as first party, and Margaret J. Du Barry as second party.

### "Witnesseth

"The second party hereby agrees to accept on consignment account instruments and benches consigned to her at prices to be determined between the parties hereto from time to time upon the following terms and conditions.

"First: The second party agrees to take good care of all instruments consigned to her and to be responsible for the safekeeping of the same, agreeing to keep all said instruments fully insured at their wholesale valuations, loss, if any, to be payable to the first party.

"Second: The second party agrees that upon the sale of any instrument for cash she will immediately remit to the first party the wholesale price thereof. On all sales for other than cash she will take a conditional sales contract therefor which shall bear interest at a rate not less than 6% per annum, payable annually; said conditional sale contract shall be duly assigned to the first party, transferring all rights of the second party in and to said conditional sales contracts; subject, however to the conditions of this contract, said conditional sales contracts to be forwarded to the first party weekly.

"Third: The second party agrees to pay to the first party interest at the rate of 6% per annum after four months from date of shipment on all instruments not otherwise settled for, but no construction of this clause shall be considered other than consignment account; title to all instruments to remain in the first party until paid for.

"Fourth: The second party shall keep the first payment received from each instrument sold and one-half

of all subsequent payments until the payments made on each contract reduce the balance due thereon to an amount where the share of the second party in said contract is equal in amount to ten per cent. of the sales price of said instrument, and thereafter the first party shall receive all of the payments upon said instrument until the share of the first party in said conditional sales contract together with interest on its said share, which shall be at the contract rate but in no event less than six per cent., is paid out in full; thereupon the first party shall reassign said contract to the second party and all subsequent payments thereon and all interest in and to said contract shall belong to the second party.

"Fifth: The second party shall have the right to sell instruments so consigned to her on terms of $10 per month for pianos and $15 per month for player pianos and grands.

"Sixth: Customers shall be allowed ninety days grace in the event of illness or lack of employment before the said contracts shall be declared in default.

"Seventh: In cases where the second party decides to replevin an instrument as the result of delinquency, or upon the demand of the first party for any reason sufficient to the first party, when said instrument so replevined is again in the possession of the second party it shall remain on consignment but the wholesale price thereof shall be reduced by the amount of the payments made thereon and received by the first party. The said repossessed instrument shall thereafter be controlled by the terms of this contract.

"Eighth: In case a customer absconds with an instrument and said instrument cannot be located for the purpose of replevin, then the second party after a reasonable time is allowed therefor agrees to pay the first party in cash for said instrument and thereupon the first party shall assign to the second party the conditional sales contract covering the same.

"Ninth: In the event the first party elects to discontinue making consignment shipments to the second party, it shall serve upon the second party four months written notice of its intention so to discontinue,

384

during which said four months the second party shall have the right and option to purchase from the first party any instrument on consignment and unsold by paying therefor in cash.

"Tenth: It is mutually understood and agreed that the second party shall make all collections upon said instalment contracts and remit weekly to the first party its share of all payments made thereon, transmitting to the first party a statement showing on what accounts said payments were made.

"Eleventh: In the event the second party shall fail to keep and perform any of the terms, covenants or agreements in this contract contained, the first party shall then have the right, without notice to the second party, to take over the collection of all conditional sales contracts and to account to the second party for such balance only as remains from said collections, after deducting the amount due the first party as herein specified together with interest and any and all costs and expenses to which the first party may be placed by reason of the breach hereof by the second party, and the second party shall thereupon surrender up to the first party any instrument remaining on hand and unsold and deliver—to the first party any contracts evidencing sales which have not yet been turned over to the first party under the terms of this agreement.

"Twelfth: This contract shall not be binding until approved by the president of the first party.

"In Witness Whereof, the first party has caused these presents to be duly executed by its secretary thereunto duly authorized and the second party has hereunto set her hand and seal this 24th day of November, 1924.         P. S. Wick Company,

(Seal)          "By H. Johnson, Its Secretary.
                    "Margaret J. Du Barry (Seal)
"Approved P. S. Wick, President P. S. Wick Co."

This contract was signed in Seattle by Mrs. DuBarry, and by appellant by (Miss) H. Johnson, as secretary. It was, as noted, approved by its president in St. Paul, Minnesota.

The trial court found:

"That at the same time the parties entered into an oral contract by the terms of which the defendants were to have all of the state of Washington as their exclusive territory for the sale of pianos manufactured by the plaintiff for such time as the written contract continued in effect."

■ With respect to that finding, appellant made the following request to the trial court, which was refused:

"That, if the court do make any finding to the effect that there were any oral agreements between the parties hereto, that the court specifically find where such oral agreement was made, by whom such oral agreement was made, when such oral agreement was made and the specific terms of said agreement as to the exclusive territory which was to be held by the defendants."

As to the requested finding, the court having found that the written contract was entered into between respondents and Miss Johnson, secretary of appellant, on November 24, 1924, it must be presumed that the alleged oral contract was made at the same time; consequently it would necessarily have been made at the same place.

■ Respondents also alleged, and proved by their testimony, a subsequent modification of the oral contract under which they relinquished the state of Washington east of the Cascade Mountains, except Ellensburg.

Respondents also alleged, proved, and the court found:

" . . . that there is and was at all times herein mentioned a general custom on the part of those engaged in the retail piano business under which a manufacturer of pianos protects the dealers handling pianos of its manufacture within the territory allotted or

occupied by the dealer against competition of other representatives of the same manufacturer within the same territory.''

The main and pivotal contention of appellant is that evidence of the alleged oral agreement should have been excluded. Its contention is that evidence of the contemporaneous agreement for exclusive territorial rights was inadmissible.

The consensus of all our decisions is that, where a writing contains all the essentials of a contract, the law will presume that the parties have culminated their negotiations in it. *Passow & Sons v. Kirkwood Distillery Co.*, 54 Wash. 196, 103 Pac. 34; *Interstate Engineering Co. v. Archer*, 64 Wash. 629, 117 Pac. 470; *Brewster District Unit v. Monroe*, 117 Wash. 21, 200 Pac. 841; *American Paper Co. v. Hastings*, 123 Wash. 595, 212 Pac. 1071; *Sexton v. Reilly*, 131 Wash. 206, 229 Pac. 305.

On the other hand, it is just as well settled in this state, as well as in most jurisdictions, that, where it appears that only a part of a contract is in writing, the part not in writing may be proved by oral testimony in so far as it is not inconsistent with the written portion. *Gaffney v. O'Leary*, 155 Wash. 171, 283 Pac. 1091.

As was observed by Judge Fullerton in the *Hastings* case, *supra*, where the order constituting the contract did not specifically state the time or place of delivery, parol evidence would be admissible to determine the intention of the parties on that point.

It will be observed that the written contract before us designates no territory whatever in which respondents were to operate. Nor was it implied, as was the case in the terms of the contract in the *Passow* case, *supra*. It would have been operative as well in Minnesota, or throughout the universe, as in Washington.

It was certainly an essential part of the contract what should be the territory of respondents in the sale of the pianos. It being silent upon that question, it was no variance or alteration of the contract to show the territory that the contract was to cover. This phase of the case we consider governed by the cases of *Interstate Engineering Co. v. Archer, supra; Kleeb v. McInturff*, 62 Wash. 508, 114 Pac. 184; *Potlatch Lumber Co. v. North Coast Produce Co.*, 78 Wash. 533, 139 Pac. 496; *Gaffney v. O'Leary, supra.* Whether this essential term of the contract was omitted by inadvertance or mistake, is immaterial, since as to that it was silent.

We are compelled to conclude that the oral evidence as to the exclusive territory to be given respondents was competent and properly received.

■ Appellant strenuously contends that even if the evidence was admissible, it was not sufficient to establish the existence of such an agreement.

Although the oral testimony was in sharp conflict, there was ample evidence upon which the court was justified in making such finding.

Moreover, there is correspondence and oral testimony in the record that in 1926 and 1927 the contract for the exclusive right to sell in western Washington was confirmed by President Wick himself, and that another piano dealer who was operating in that territory should be excluded. With such confirmation of the oral contract for the exclusive territory, the proof is preponderant in favor of respondents as to it.

As to the evidence and finding by the court of the custom in regard to exclusive territory protecting piano dealers, under the conclusion we have reached on the other matter, we do not consider it material, except as some corroboration of the making of the oral contract for exclusive territory.

■ Appellant also contends that there was no proof sufficient to sustain any kind of damage to respondents. Since the trial judge believed the witnesses for respondents, and there was evidence in the record which would possibly have justified an award approximating up to about $40,000 to respondents, and the court allowed only $15,000, we cannot disturb it.

The recovery in such cases must, of course, be limited to the amount which, from all the surrounding conditions, may be deemed to have been reasonably certain had the breach not occurred, which was amply sustained here. *Federal Iron & Brass Bed Co. v. Hock,* 42 Wash. 668, 85 Pac. 418; *Belch v. Big Store Co.,* 46 Wash. 1, 89 Pac. 174; *Bogart v. Pitchless Lumber Co.,* 72 Wash. 417, 130 Pac. 490.

We can find no error, and the judgment is affirmed.

MITCHELL, C. J., MAIN, PARKER, MILLARD, and BEELER, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. The majority seem to proceed on the theory that the written contract is incomplete in that it did not contain the entire contract between the parties, and hence it was competent to show the omitted parts by parol.

Unquestionably, were the premise here assumed correct, the principle of law applied would follow. But I am unable to accept this as a correct construction of the contract. Manifestly, it seems to me, the contract was so far complete that, without addition thereto, subtraction therefrom, or modification in any manner, the parties could have acted under it and carried it out as written; and this, as I understand the rule, is the test of a complete contract.

But the majority say that it "will be observed that

the contract designates no territory in which the respondents were to operate," and further say that it "was certainly an essential part of the contract what should be the territory of the respondents in the sale of pianos." But to my mind the first of these assertions is utterly without foundation. The contract granted to the respondents the right to sell the pianos of the appellant. Clearly, this grant included the right to sell at any place or in any territory where they could find a purchaser. The failure to delineate the territory, instead of precluding the right to sell in any territory, gave them the right to sell in all territory, and, conceding it to be, as the majority say, an "essential part of the contract what should be the territory of respondents in the sale of pianos," the contract grants them such territory. It may be that I do not understand the meaning of the majority where they further say that the contract, construed as I have construed it, would render it "operative as well in Minnesota, or throughout the universe, as in Washington," but if it be meant that sales are prohibited elsewhere than in the state of Washington, I can answer it in no other way than to say that the contract contains no such prohibition.

The contract being thus complete, I am unable to follow the majority in their holding that it can be added to by a contemporaneous parol agreement. Our own cases, as I read them, are contrary to the conclusion reached by the majority. The case of *Passow & Sons v. Kirkwood Distilling Co.*, 54 Wash. 196, 103 Pac. 34, is particularly in point. The contract in that case is almost the exact counterpart of the contract in this case. The cause of action was the same, in that the plaintiff sued to recover the value of certain goods consigned to the defendant and for which it had not accounted. The defendant set up a number of defenses, one of which

was that it was orally agreed between the parties at the time the contract was executed that the consignees should have the exclusive right to sell the consigned goods in the states of Washington and Idaho, and that the consignor had ·breached the agreement in this respect to their damage. The trial court excluded the testimony, and this court sustained its holding, using this language:

"The answer further alleged that it was agreed between the parties that the appellant should have the exclusive agency for the sale of the respondent's goods during the life of the contract for the territory of Washington and Idaho, and that the respondent's goods should be sold in that territory only through the agency of the appellant, and damages were claimed for the violation of this agreement. ·The written contract provided that the respondent should 'send and forward to the said parties of the second part at Spokane, Wash., to be received on consignment by the parties of the second part, such saloon fixtures, billiard and pool tables and other goods manufactured by the party of the first part as the said parties of the first part shall see proper.' This defense tended to vary and contradict the terms of the written contract and evidence offered to sustain it was properly rejected."

The contract in that case specified no territory in which the consignee was at liberty to sell the goods of the consignor, and in that respect was the same as the contract in the present case. The majority seek to distinguish it from the present case by saying that in the one case the territory was "implied," while it is not so in the other. On what ground this distinction is founded is not stated, and I confess my inability to discover any. It seems to me that the same rule is applicable to both, namely, that a contract authorizing one person to sell the goods of another without delineating the territory in which the goods are to be

sold, is an authorization to sell the goods in any territory.

It may be that I should leave the question here, but, as I read the record, the learned judge who heard the case in the court below did not rest the judgment of the court on the ground that the majority find controlling. As noted in the majority opinion, he found that there was a custom among piano dealers to protect their consignees by awarding them an exclusive territory in which to make sales of the consigned goods. The majority find it unnecessary to discuss this phase of the case, and notice it only as "some corroboration of the making of the oral contract for exclusive territory," but I cannot conceive that it has even this effect. As a principle of law, it is not sound. It is no more permissible to vary the terms of a written contract by showing a custom contrary to the terms of the writing than it is to vary its terms by showing a contemporaneous parol agreement.

The second ground on which the trial court rested its judgment possibly has more of merit, yet I think it unfounded. The court concluded that the parol agreement was a separate and independent agreement and could stand as such without reference to the written agreement. Unquestionably, it is the rule that a written agreement may be modified by a subsequent parol agreement, if the subject-matter of the written agreement is such that it can rest in parol. But here the parol agreement was not subsequent to the written agreement. The proofs show that it formed a part of the negotiations at which the written agreement was formulated. To permit it to stand, therefore, can have no other effect than to vary the terms of the written agreement.

In my opinion, the judgment of the trial court should be reversed.

392

BEALS, J. (dissenting)—I concur with Judge Fuller-ton. In addition to the grounds of dissent stated, I am of the opinion that respondents failed to prove damages in anything like the amount for which judgment was rendered in their favor.

TOLMAN, J., concurs with FULLERTON and BEALS, JJ.