[No. 4355.   Decided January 7, 1903.]

W. H. ROSS et al., Appellants, v. PORTLAND COFFEE & SPICE COMPANY, Respondent.

CONTRACT OF EMPLOYMENT — ADMISSIBILITY OF PAROL TO VARY.

Where a written contract for commissions to a salesman provides that goods returned by customers shall not be considered as sold, nor the salesman entitled to commissions thereon, and, further, that defendant reserves the right to reject any and all orders for any good and sufficient reason, parol evidence is inadmissible for the purpose of showing that defendant agreed as an inducement to the contract that the salesman should have a commission on all orders sent in and accepted by defendant.

SAME — SALESMAN — RIGHT TO COMMISSIONS.

Where a salesman's contract for commissions provided that he should be paid monthly on all sales made during the preceding month, but that goods returned by customers should not be considered as sold, the salesman is entitled to commissions only upon that portion of an order for goods delivered to the customer and retained by him, when the terms of the order provided that part of the goods were to be delivered at a certain time and the "balance as ordered," and that goods should be sent under a warranty, subject to the customer's approval.

SAME.

Under a contract giving a salesman commissions at the end of each month on the sale of goods made by him, if not returned by the customer, he is entitled to commissions upon orders taken by him which were enforceable on the part of the vendor as binding contracts of sale, although providing for future delivery, if the order provided for their shipment on or before a certain date, and contained no conditions as to approval or right of countermand by the customer.

Appeal from Superior Court, King County.—Hon. WILLIAM R. BELL, Judge. Reversed.

*Remsberg & Simmonds,* for appellants.

*Cake & Cake,* and *Peters & Powell,* for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—The respondent is a wholesale dealer in teas, coffees, spices, and other groceries. On the 5th day of November, 1899, it entered into a contract with one Posson, whereby he was to act as traveling salesman for respondent's goods from date of contract up to and including December 31, 1900,

"in that territory commonly known as the 'Sound Territory,' the Columbia River between Portland and Astoria, and that portion of Eastern Oregon not now occupied by said company's representative, and to cover and canvass said territory as the party of the first part may direct, and is to sell goods, wares, and merchandise carried in stock by the said party of the first part, consisting of teas, coffees, spices, etc., as directed by the said party of the first part. The said party of the second part to receive as his compensation for said services as commission on all goods. so sold by him, the said party of the second part, as follows: Mocha and Java coffees, 15 per cent.; other coffees, teas, spices, baking powder, etc., 12½ per cent.; Arbuckle and Lion coffees, soda, chocolates, cocoas, 5 per cent. on the selling price of said goods.

"It is understood that goods returned by customers shall not be considered as having been sold, and therefore the party of the second part shall not be entitled to commission thereon.

"It is further agreed that all commissions are to be paid by the party of the first part to the party of the second part at the end of each month for sales made by the said party of the second part during said month; the said party of the first part to be allowed about ten days into the succeeding

month to make up statements, and determine amount of commission due the party of the second part for such sales made as aforesaid.

"It is further covenanted that the said party of the second part is to make no collections from any of the customers of the said party of the first part for goods sold for said party of the first part by said party of the second part, or otherwise, unless expressly directed and authorized so to do by the said party of the first part; and the said party of the first part reserves the right to reject any and all orders taken by the said party of the second part in event any of such orders are considered unworthy of credit by the said party of the first part, or for any other good and sufficient reason.

"It is further understood and agreed that the said party of the second part shall reside either in Seattle or Tacoma, Washington, during the continuance of this contract.

"Finally, the said party of the first part hereby reserves the right to annul and terminate this contract if the said party of the second part fails to prosecute the duties of his position in a diligent manner, or fails to be temperate and honest, or to account to said party of the first part for any and all transactions had and done for the said party of the first part by the said party of the second part by reason of this contract."

Posson entered into the employ of respondent under the contract, and continued until its expiration. It was his duty to solicit orders for goods of the respondent. There were two forms of orders, one for coffees, spices, etc., of which the following, a copy of Exhibit C 1, is an example:

"                                    Jany. 13, 189

Order No.——
      Portland C & S Co
Ship to Puget Sound Gro Co
At Tacoma Wash
How ship——— When ———
Terms 3 Mo
10  Bbls  M & J ———25

25 lbs free, each Bbl.

Ship 2 50-lb. tins at once, balance as ordered.

This coffee to be as good as any M & J on the market or order will be countermanded.

Puget Sound Gro Co."

And one for teas, of which the following, a copy of Exhibit H, is an example:

"                    Seattle 8|7-00

PORTLAND COFFEE AND SPICE Co.,

Portland, Oregon.

Gentlemen:

Please book our order for the following Tea, on conditions specified on margin hereof:

(Here follow items of the order)

To be shipped as follows: Del. in Seattle at times hereafter specified, and 2c per pound to be deducted from whole order when last shipment made.

Terms: 90 days, or 3 per cent. for cash.

Signed          K. & McK."

Margin

"IMPORT TEA ORDER.

Not subject to change or countermand, and prices named do not include war tax or duty, and it is understood and agreed that same is to be added to bills, whatever it may be at time of shipments,—and entire order is to be shipped on or before Mch 1st, 1901."

These orders were signed by the customers; the customer retaining the original, and the agent keeping a carbon copy.    From this copy the agent would fill out an order sheet, which was sent to the respondent.    On the 25th day of March, 1901, or nearly three months after Posson had ceased to be an employee of defendant under said contract, he assigned all his rights under the contract to the plaintiffs herein.

The complaint, after setting out the contract and assignment, alleges:

"That the said Guy Posson has faithfully and in all things kept and performed the covenants and conditions on his part to be kept and performed under and by virtue of the terms of said contract, but that the said defendant has wholly failed, neglected, and refused to pay to said Guy Posson, or to these plaintiffs, the amount of commission due to these plaintiffs as the assignees of said Guy Posson, and that there is now due and owing to these plaintiffs, as the assignees of said Guy Posson, a large sum of money, to-wit, the sum of four thousand (4,000) dollars."

The answer denies the allegations of the complaint, and alleges:

"That this defendant heretofore, and prior to any assignment to the plaintiff by the said Guy Posson of any claim or demand of any commissions earned by him under and in pursuance to the contract between said Guy Posson and these defendants set forth in plaintiffs' complaint, or any other claim or claims arising under and by virtue of the terms of said contract, has fully settled with the said Guy Posson for any and all amounts due him as commissions or otherwise, and for all claims arising or to arise under and by virtue of the terms of said contract, and has prior to any such assignment fully paid the said Guy Posson for all amounts so due to him as aforesaid, in full satisfaction for all commissions or other claims under said contract."

The affirmative defense was denied in the reply. The issues were joined, and at the trial plaintiffs sought to introduce in evidence all orders solicited by their assignor. This was objected to, except so far as such orders showed goods actually shipped. The objection was sustained, and at the close of plaintiffs' evidence it was agreed between the parties that goods actually ordered for shipment, and shipped by the defendant on orders solicited by plaintiffs' assignor, were in such amount as to allow plaintiffs to recover commission on such sales in the sum of $50 in excess of payments that had been made to plaintiffs' assignor.

Thereupon the court instructed the jury to return a verdict
in such amount.     Plaintiffs objected to such instruction
and to the verdict.

The first assignment is that the court erred in rejecting
parol evidence to explain the written contract.     Plaintiffs
desired to show that defendant held out to Posson, prior
to and as an inducement for entering into the written agree-
ment, that he was to receive commission on all orders sent
in to defendant and accepted by it.     We think the court
made no mistake in refusing this offer.     The general rule
is that parol evidence is not admissible to supply, contra-
dict, enlarge, or vary the words of a written contract, and
when a contract is reduced to writing all matters of nego-
tiation and discussion of the subject antecedent to the writ-
ing are excluded, being merged in the written instrument.
Here the contract is unambiguous, and, taken as a whole,
it needs no extrinsic light to explain its meaning.     Unless
both parties acted as if interpreting the contract as the
plaintiffs contend it should be interpreted, the parol evi-
dence offered was not admissible, as it tended to set up a
different contract.     That both parties to the contract did
not act under it as plaintiffs contended is evident from the
fact that plaintiffs attempted to prove a controversy over
this very matter in dispute here between defendant and
Posson a short time after the making of the contract.     It
is concluded that the parties are bound by the terms of the
contract.                     .

The other errors assigned must be disposed of in the
light of such contract.     The contract provides for the pay-
ment of commissions at the close of each month, or shortly
thereafter, on all sales made during the month just ended,
and "it is understood that goods returned by customers
shall not be considered as having been sold, and therefore
the party of the second part shall not be entitled to com-

mission thereon." Thus by the contract the goods are not to be considered sold if the customer returns them, and conversely, if the goods were kept by the customer, they were to be considered sold, and the agent entitled to his commission. Orders were for so many drums of coffee, or pounds of spice or other goods, part to be delivered at a certain time, and balance *as ordered,* and goods to be sent under a warranty, and subject to the customer's approval. Until the customer had accepted the goods, by failure to return them, no commissions were due the agent. How a customer could have a chance to return goods until received by him, is not pointed out by the appellants. The tea contracts, however, were different. The tea was not to be shipped on approval, as were those goods called for in the coffee contracts. They were contracts for a definite quantity of goods to be taken within a specified time, for a price certain. It is true, there was an indorsement that the tea was to be shipped as ordered by the purchaser, but it was agreed that all must be shipped on or before a certain date. It was an order for goods to be shipped, part at time of giving the order, and balance to suit customer, within a date certain. If the balance had not been ordered before the time stated in the contract, the defendant could have shipped the goods and collected for the same. The customer could not change or countermand the order. If the tea had been shipped on approval, and the customer had the right to return the same if not satisfactory, it would seem that the provisions of the contract between defendant and Posson, providing that no commission should be earned on goods returned, would govern, and no claim for commission would lie until the customer had accepted the goods. "It is understood that goods returned by customers shall not be considered as having been sold," and of course, if not returned, were sold. But with the tea the customer had no option.

He was bound to accept it all within a certain time. Tiede-
man defines a sale as "a contract or agreement for the trans-
fer of the absolute property in personalty from one person
to another for a price in money." Tiedeman, Sales, § 1.
The sale of tea was an enforcible contract when accepted by
the defendant, and was in all respects a sale, either present
or future.

There was no error in the ruling on the coffee contracts.
But the tea contracts, or so much thereof as the company
accepted, represented sales under the contract between de-
fendant and Posson and entitled the latter or his assignees
to commission, and evidence thereof should have been ad-
mitted.

Reversed and remanded for a new trial in accordance
herewith.

ANDERS, MOUNT, FULLERTON and DUNBAR, JJ., con-
cur.