[No. 8363. Department Two. November 26, 1909.]

JOHN A. ROEBLING'S SONS COMPANY, *Appellant*, v.
WASHINGTON ALASKA BANK, *Respondent*,
J. H. SMITH *et al.*, *Interveners and
Respondents.*[1]

SALES—RESCISSION—TIME FOR DELIVERY. Upon the sale in August of goods to be delivered at F. in Alaska before the close of navigation, the vendees may rescind the sale in March for failure to deliver the goods before the close of navigation.

SALES—PERFORMANCE—RESCISSION—DELIVERY AND CHARACTER OF GOODS. Where, in order to secure wire cable before the close of navigation, the vendee agreed to take cable of a larger size than desired, then held in stock by the vendor, and agreed to pay the freight, and in the following March rescinded the sale for non-delivery and ordered cable of the smaller size to be delivered by the first steamer, to which the vendor replied that the goods would be shipped by the first steamer, without specifying the size, the order was for the smaller size, justifying the vendees in refusing to accept larger cable on which the freight charges were $400 in excess of charges on the smaller cable.

SALES—DELIVERY—PLACE. An agreement to deliver cable at F., in Alaska, is not performed by delivering the same at C., ten miles distant from F.

SALES—RESTING IN PAROL—WRITTEN ESCROW—EVIDENCE TO VARY WRITING. Where there was an oral sale of cable and other articles of a certain size, to be delivered at F., Alaska, before the close of

[1]Reported in 105 Pac. 174.

navigation, upon which the purchase price was deposited in bank under a written escrow agreement which did not specify the time for delivery nor the size of the cable, the contract may be proved by parol, as the escrow was only for the purpose of defining the duties of the bank and did not purport to state all the terms of sale.

COSTS—TAKING DEPOSITIONS—ALLOWANCE. Where it appears that $100 was actually expended in taking depositions, an allowance of $40 costs therefor will not be disturbed on appeal.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 9, 1909, upon findings in favor of the defendants, in an action on contract, after a trial before the court without a jury. Affirmed.

*Million & Houser*, for appellant.

*H. R. Clise*, for respondent.

*Wm. Martin, Julius L. Baldwin*, and *John F. Dillon*, for interveners and respondents.

MOUNT, J.—The appellant brought this action against the Washington Alaska Bank of Fairbanks, Alaska, to recover $1,900. This money was alleged to have been deposited in the bank, to be paid to the appellant upon delivery of two reels of eight hundred feet each of suspension bridge cable, twelve Crosby wire rope clips, and four four-inch turnbuckles, at the town of Fairbanks, Alaska; that the goods were delivered, but the bank refused to pay over the money. The bank answered, in substance, that it had received the money as alleged in the complaint, but that the goods had not been delivered, and that the persons who deposited the money had demanded the return thereof; that it holds the money for the persons entitled thereto, and is ready and willing to pay the same to the party legally authorized to receive it.

Thereafter J. H. Smith, W. H. McPhee, E. R. Peoples, and J. E. Doherty intervened in the action, and alleged that they, as a committee of citizens of the town of Fairbanks, had been authorized to collect money to purchase materials for

the construction of a bridge across the Chena river, in said town; that on August 15, 1906, they entered into a contract with the plaintiff, whereby the plaintiff agreed to deliver, at the town of Fairbanks, before the close of navigation of that year, two reels each of eight hundred feet galvanized suspension bridge cables, one and one-half inches in diameter, and the other articles named in the complaint, for the price of $1,900, plus the freight from Seattle to Fairbanks, payable on delivery of the goods at Fairbanks; that on the same day an escrow agreement was entered into, and $1,900 was paid by them into the bank, to be paid to the plaintiff upon the arrival of the goods at Fairbanks; that the plaintiff failed to deliver the goods as agreed upon, or at all, and subsequently the interveners demanded a return of the money deposited with the bank.

The plaintiff, for reply to the answer in intervention, after denying certain allegations of the answer, alleged that the contract of sale was in writing as contained in the escrow agreement; that the goods were delivered as agreed upon; and that the interveners had neglected and refused to pay the freight and storage charges, amounting to $1,250 upon the goods after they left Seattle. Plaintiff prayed for a judgment against the interveners in the sum of $1,250. Upon these issues the case was tried to the court without a jury. The court made findings of facts substantially in accordance with the allegations of the answer in intervention, and entered a judgment in favor of the interveners for the $1,900 held by the bank, and dismissed the plaintiff's complaint. The plaintiff has appealed.

We think there is no substantial dispute upon the facts. It appears that in August, 1906, the citizens of Fairbanks, Alaska, desired to construct a bridge across the Chena river in that town; that for such purpose the citizens selected the interveners as a committee to purchase materials for the bridge. This committee desired two reels of suspension bridge cable, each cable eight hundred feet in length and one

and one-half inches in diameter. They also desired the other articles named in the complaint. The plaintiff's agent, George H. Abbott, was upon the ground and desired to furnish the articles named. He represented that he could not furnish the one and one-half inch cable at once, because it was not held in stock by the plaintiff, but that the plaintiff had on hand the required amount of two and one-fourth inch cable, which could be shipped at once and would be sold at the price of the one and one-half inch cable. The plaintiff's factory was located at Trenton, New Jersey, but it maintained a branch office at Seattle in this state. The committee desired the goods before the close of navigation in the fall of 1906; and, in order to obtain the same at that time, agreed to accept the two and one-fourth inch cable; and in addition to the purchase price of $1,900 agreed to pay the freight from Seattle to Fairbanks. It was then also agreed that the purchase price, $1,900, should be collected from the citizens and placed in the Washington Alaska Bank, at Fairbanks. The money was collected and was deposited in the bank with the following escrow agreement:

"The sum of nineteen hundred ($1900) dollars herewith deposited in escrow with the Washington-Alaska Bank of Fairbanks, Alaska, is for the payment of two (2) reels of eight hundred (800) feet each of galvanized suspension bridge cables; twelve (12) Crosby wire rope clips and four (4) inch (4″) turnbuckles. Said nineteen hundred ($1900) dollars to be forwarded immediately upon the arrival of above mentioned equipment to John A. Roebling's Sons Company, Seattle, by the Washington Alaska Bank. It is mutually understood and agreed by and between George H. Abbott, representing John A. Roebling's Sons Company, and the committee whose names are signed hereto as representing the Citizens Committee who act as purchasers of aforesaid material, that the sum of nineteen hundred ($1900) dollars is in payment for said material delivered in Seattle, Washington, and that all freight charges between Seattle, Washington, and Fairbanks, Alaska, are to be defrayed and paid by said committee upon arrival of material in Fairbanks.

Above specified material is consigned to the Washington-Alaska bank, and will be turned over to said committee on its arrival in Fairbanks upon payment of freight charges as set forth in the foregoing: And I, George H. Abbott, representing John A. Roebling's Sons Co., do hereby authorize the Washington Alaska Bank of Fairbanks, to act as custodian of said nineteen hundred dollars, and to forward the same to John A. Roebling's Sons Co. on arrival of material in Fairbanks. Signed this 15th day of August, 1906.

"For the buyers: Citizens Committee of Fairbanks, Alaska. J. E. Doherty, W. H. McPhee, E. R. Peoples and J. H. Smith."    For the Seller: John A. Roebling's Sons Co., By George H. Abbott."

The goods arrived at the Seattle office too late to be shipped in the fall of 1906. On March 17, 1907, the committee, through its secretary, wrote the following letter to the plaintiff's Seattle office:

"John A. Roebling's Sons Co.

"Gentlemen: Your Mr. George H. Abbott entered into an agreement with our citizens committee, Aug. 15, 1906, to deliver at once two reels of eight hundred feet each of bridge cable, twelve Crosby wire rope clips and four turnbuckles. Nineteen hundred dollars was placed in escrow with the Washington-Alaska Bank to be turned over to your firm upon the arrival of said cable. Your Mr. Abbott informed us he wired you that you had for immediate shipment the cable in two inch in diameter, but was out of one and one-half inch—the kind desired with steel core. We agreed to accept the two inch cable as it was all you had on hand at that time, but it was to be shipped at once so as to arrive here before the close of navigation. Now we have never heard a word from you or your agent Mr. Abbott; nor have we seen sight of the cable; this does not look good to us from a business standpoint, and now want that you should ship us the two cables one and one-half inch in diameter as we originally wanted, and want it shipped by May 25th, via Dawson, so as to arrive here on first steamer. Hoping you will see to this matter at once, we remain,

"Truly yours,      Joseph H. Smith,
"Sec. Lacey Street Bridge Fund."

This letter was received at Seattle on May 8, 1907, and was answered as follows:

"Jos. H. Smith, Esq., Lacy Street Bridge Fund,
          "Fairbanks, Alaska.

"Dear Sir: We beg to advise you that the order placed by you will leave Seattle on the first boat sailing for Dawson. We advised Mr. Abbott by cable his order had been received too late to ship last fall. We have had the material in stock all winter, and should have liked very much to have shipped in time for your requirements. The conditions are such however it was absolutely impossible for us to do other than we have done. Thanking for the order and trusting you will receive the same in good order, we beg to remain, Yours very truly,
                    "John A. Roebling's Sons Co.,
                      "W. F. Richardson, Mgr."

Instead of shipping the one and one-half inch cables as ordered, the plaintiff shipped the two and one-quarter inch cables, which arrived at Chena, Alaska, about July 1, 1907. Chena is about ten miles distant from Fairbanks. The committee refused to receive the larger cables at that time, and refused to pay the freight thereon, which was about $400 in excess of what the freight on the smaller cables would have been. The committee thereupon demanded of the bank the return of the money deposited therein. The cables were never delivered at Fairbanks, but remained in storage at Chena, Alaska.

It is clear that the plaintiff did not deliver the two and one-fourth inch cables at Fairbanks in the fall of 1906. These cables were not shipped from Seattle until after May 1, 1907. Hence, if the contract was that the large cables should be delivered during the fall of 1906, plaintiff did not comply with the terms of its contract. The letter of March 17, 1907, from the defendant to the plaintiff, was a clear rescission of the order for the two and one-fourth inch cable. This letter stated: "We . . . now want that you ship us the two cables one and one-half inches in diameter as we originally

wanted and want it shipped by May 25, via Dawson, so as to arrive here on the first steamer." In answer to this letter no mention is made of the fact that larger cables would be shipped, but it was stated: "We beg to advise you that the order placed by you will leave Seattle on the first boat sailing for Dawson." Upon the receipt of this letter the defendant had a right to assume that the smaller cables which they desired would be shipped. If the contract was for delivery of the larger cables at Fairbanks during the year 1906, the committee certainly had a right to countermand that order when such cables were not delivered as agreed, and when the plaintiff had not parted with possession. They did so countermand the order on March 17, 1907. When the larger cables were shipped in 1907 and arrived at Chena within ten miles of Fairbanks, the interveners were also within their legal rights when they refused to accept the larger cables after having ordered the smaller ones.

It is argued by the appellant that the terms of the contract between the appellant and the committee were stated in the escrow agreement, and that oral evidence was not admissible to vary or contradict this agreement. Under the terms of this escrow agreement the $1,900 was to be paid to the appellant "on arrival of material at Fairbanks." The material never reached Fairbanks. It is still at Chena, ten miles distant therefrom, so far as the record in this case shows. This escrow agreement is silent upon the size of the cables and upon the time of delivery. It could not reasonably be contended that, if the appellant had shipped the cables so small or so large as to be utterly useless to respondent, appellant could still recover the price agreed upon. It is apparent that the size of these cables had much to do with fixing the price and the freight charges, and that this was a material part of the contract of sale. It is apparent upon the face of this writing that it was only for the purpose of defining the nature of the deposit and the duties of the bank where the money was deposited, and that such agreement

contained only such part of the contract of sale which had theretofore been entered into between the appellant and the committee as was necessary to show the purpose of the deposit and the duties of the bank with reference thereto, and was not intended to contain all the terms of the contract of sale. The evidence clearly shows that the contract of sale between the appellant and the committee as originally made rested in parol. It was therefore susceptible of proof by parol. The only written evidence of the terms of the contract of sale is what appears in the escrow agreement and the letters above copied, which were all written after the contract was made. These writings do not vary the terms of the contract as relied upon by the respondents, and there was no attempt to vary or contradict these writings by parol. We are satisfied from the evidence that the appellant failed to deliver the goods within the time, or of the size, agreed upon, and that the trial court found correctly upon these points.

It is argued that the court erred in allowing $40 as costs of taking certain depositions. It appears by affidavit to the cost bill that $100 was actually expended therefor. We find nothing in the record to indicate that the sum allowed by the court was not the necessary expense of taking the depositions, and must therefore decline to disturb this order.

No error appearing in the record, the judgment is affirmed, with costs to the respondent interveners and also to the respondent bank.

RUDKIN, C. J., DUNBAR, PARKER, and CROW, JJ., concur.