[No. 11013. Department Two. October 10, 1913.]

## O. G. ALLEN, *Respondent*, v. FARMERS & MERCHANTS BANK OF WENATCHEE, *Appellant*.[1]

EVIDENCE—WRITTEN CONTRACT — CONTRADICTION — ORAL CONTEMPORANEOUS AGREEMENT. Where a bank had, without authority, used $3,000 of plaintiff's deposit in a transaction with his brother, a written contract between the three parties providing that the bank would pay the amount to plaintiff if certain real estate, conveyed to the bank by the brother in full liquidation of his own debt, could be sold within a year for $15,000, is a complete agreement on its face, so as to preclude evidence of an oral contemporaneous agreement that the plaintiff was to forfeit all right to the $3,000 if the land could not be sold as contemplated in the written agreement.

CONTRACTS—CONSIDERATION—AGREEMENT TO PERFORM—LEGAL OBLIGATIONS. Where a bank had, without authority, used $3,000 of plaintiff's deposit in a transaction with his brother, and a written contract between the three parties provided that the bank would pay the sum to the plaintiff, in case certain real estate, conveyed to the bank by the brother in full liquidation of his own debt, could be sold within a year for $15,000, an oral agreement on the plaintiff's part to forfeit the $3,000 in case no such sale could be made, was not supported by a sufficient consideration; since there was no evidence that the brother owed the bank anything or that the plaintiff had agreed to pay any such debt, and the only consideration for an extension of time to pay the deposit was the bank's agreement to pay interest; payment of the deposit being nothing more than the bank was already bound to do.

[1]Reported in 135 Pac. 621.

COMPROMISE AND SETTLEMENT—CONSIDERATION. Where there is no doubt as to a party's right, a compromise is not a sufficient consideration for a contingent waiver of that right.

APPEAL—RECORD—REVIEW—INSTRUCTIONS. Where the record contained only part of the instructions, which were unobjectionable as far as they went, it will be assumed on appeal that other instructions correctly covered the law of the case in other particulars.

NEW TRIAL—MISCONDUCT OF JURORS—IMPEACHING VERDICT. On motion for a new trial, a jury's answer to a special interrogatory respecting a certain exhibit cannot be impeached by the affidavit of jurors that they mistook another paper for the exhibit, but for which mistake the interrogatory would have been answered differently; since the matters set forth inhere in the verdict.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered May 2, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a bank deposit. Affirmed.

*Williams & Corbin* and *Fred Kemp*, for appellant.

*Stephen E. Chaffee, V. O. Nichoson,* and *Parr & Hubbard,* for respondent.

ELLIS, J.—The plaintiff brought this action as a depositor against the defendant bank, alleging, in substance, that he had deposited money with the bank subject to check, and that the bank had failed to pay him $3,000 of the money so deposited, though demand had been made upon it. The amended answer on which the defendant went to trial alleged that the money was deposited by one E. M. Allen, a brother of the plaintiff, who, at the time, informed the officers of the bank that $3,000 of the money so deposited belonged to E. M. Allen, and that he had authority from the plaintiff to use the balance of the money so deposited; that the defendant applied the $3,000 in certain transactions with E. M. Allen, and that the plaintiff had ratified the use of the money in the transaction with E. M. Allen by the execution of a written instrument which was set out as an exhibit and attached to the answer. It is also alleged that the bank's use of the money was further ratified by the plaintiff filing

the instrument for record in the office of the county auditor. The affirmative matter in the amended answer was traversed by the reply.

The evidence shows that, prior to the deposit in question, E. M. Allen and his wife were the owners of twelve acres of land near Wenatchee, in Chelan county, which was incumbered by mortgages to the extent of something over $6,000, and that E. M. Allen was also indebted to the bank in a sum a little less than $6,000, evidenced by unsecured promissory notes. E. M. Allen being apparently unable to pay these notes, it was agreed between him and the bank that the bank should take the property, subject to the mortgages thereon, and deliver to E. M. Allen the notes evidencing his indebtedness to the bank. Accordingly, on February 7, 1910, E. M. Allen and his wife, by warranty deed, conveyed the twelve acres to the bank, subject to the mortgages against it, in consideration of the surrender and cancellation of the notes. The deed was duly executed and delivered to the bank, and the notes were cancelled and delivered to E. M. Allen.

The plaintiff, prior to this time, owned, under a contract of purchase, ten acres of fruit land near Wenatchee. This he listed for sale with certain real estate agents, and went to Alaska in February, 1910. In March, a sale of this land was negotiated for $6,000 cash. The assignment of the real estate contract was sent to the plaintiff in Alaska for execution, was executed and returned by him to Wenatchee, where the sale was closed. The purchase price, which, less the expenses of sale, amounted to $5,921.75, was deposited in the bank by the plaintiff's brother to the plaintiff's credit on March 18, 1910. This is evidenced by the deposit slip and the books of the bank, which, it is admitted, show that the deposit was made for the full amount in the plaintiff's name on that date. After the sale, the plaintiff wrote to the bank, asking for a statement of his account, and in answer received a statement showing a balance in the bank to his credit on April 6, 1910 amounting to $5,855.15. The plaintiff re-

turned to Wenatchee in the summer of 1910, and so far as the evidence shows, the first conversation he had with any officer of the bank was with its president, one W. A. Thompson, on October 13, 1910. At that time, he inquired how much money he had in the bank and Mr. Thompson replied, "three or four hundred dollars," and refused to tell him what had become of the money, but requested the plaintiff to bring his brother to the bank. On the following day, the bank paid to the plaintiff all of the money so deposited to his credit excepting $3,000 which Thompson claimed had been used by the bank, with the consent of E. M. Allen, in payment of a part of the mortgage indebtedness against the 12-acre tract deeded by E. M. Allen to the bank. Touching this $3,000, an agreement was drawn up by the attorneys for the bank, and signed by the bank, by E. M. Allen and wife and by the plaintiff. That agreement was as follows:

"Memoranda, entered into the 14th day of October, A. D. 1910 by and between the Farmers & Merchants Bank of Wenatchee, a corporation, as party of the first part, E. M. Allen and Benteen Allen, his wife, parties of the second part, and O. G. Allen, party of the third part, Witnesseth:

"That, Whereas, The party of the third part claims a sum of $3,000 used by the parties of the second part in certain transactions with the party of the first part was his property and not the property of the parties of the second part, and 2nd parties hereby acknowledge same, and

"Whereas, The party of the first part is willing that the said sum of $3,000 may be paid to the party of the third part upon certain contingencies and conditions as hereinafter set out:

"Therefore, it is mutually understood and agreed between the parties hereto that if the real estate now owned by the party of the first part heretofore known as the E. M. Allen twelve-acre tract can be sold on or before one year from this date at not less than $15,000 net to the party of the first part and for not less than one third cash, the balance in not to exceed five years' time with interest thereon at not less than 8% per annum payable annually, then the party of the first part will, out of the proceeds from said sale set aside, or

cause to be paid or pay to the party of the third part the said sum of $3,000 with 8% interest.

"And it is mutually understood and agreed that time is the essence of this contract and that the same shall be binding upon the parties hereto, their heirs, executors and administrators.

"In Witness Whereof, the parties hereto have hereunto set their hands and seals this 14th day of October A. D. 1910.

"Farmers & Merchants Bank of Wenatchee

"W. A. Thompson, Pres.   (seal)

"E.. M. Allen               (seal)

"Benteen Allen              (seal)

"O. G. Allen                (seal)"

The president of the bank testified that when, on March 18, E. M. Allen appeared at the bank with the $5,921.75, he informed the president that $3,000 of that sum belonged to him personally and the balance to his brother, the plaintiff, that the money was the proceeds of a sale of lands belonging to E. M. Allen and the plaintiff, and that the plaintiff had authorized him, E. M. Allen, to use the balance temporarily, if necessary. He also testified that, in support of this statement, E. M. Allen showed him a letter from the plaintiff, reading as follows:

"Haines, Alaska, March 7, 1910.

"E. M. Allen. I enclose papers. I would like to keep at least half of this money as I do not know how long I will last up here. It has been 10 below here with 2 ft of snow today.

"Yours, O. G. Allen."

E. M. Allen testified that he never, at any time, told Thompson or any other person connected with the bank that any part of the money deposited by him in the plaintiff's name on March 18, 1910, belonged to E. M. Allen, and that he had never, at any time, stated that he had the privilege of using all or any part of the money, and that, in fact, he did not own any of the money and had no such privilege. The plaintiff testified that no part of the proceeds of the sale of the land ever belonged to E. M. Allen, and that he had never authorized him to use it, and denied that E. M. Allen ever had any inter-

est in the land. If the transfer of the twelve-acre tract by
E. M. Allen and wife to the bank was not as it appeared on
its face, an absolute sale, there was no evidence whatever
that the plaintiff had any knowledge of that fact at the time
he signed the written agreement above set out.

Before the trial, the defendant asked leave to file a sec-
ond amended answer, in substance the same as its first amended
answer, with the addition of a third affirmative defense alleg-
ing that, on October 14, 1910, E. M. Allen and wife, the
plaintiff, and the bank entered into a compromise agreement
partly oral and partly written and that, at the time of the
execution of the written agreement of that date, it was fur-
ther orally agreed between the parties that, if the sale of the
twelve-acre tract was not made within the time and at the
price specified in the written agreement, the plaintiff should
forfeit all right to the $3,000 therein referred to. The trial
court refused permission to file this second amended com-
plaint, apparently upon the ground that evidence of the
parol agreement therein set out was inadmissible in that it
would tend to contradict and vary the terms of a written
agreement complete in itself.

The jury returned a verdict against the defendant for the
sum of $3,000 with interest from October 14, 1910, and an-
swered the following special interrogatory in the negative:

"Do you find that O. G. Allen signed Exhibit 'A' with full
knowledge that the defendant had applied the $3,000 sued
for on indebtedness against the E. M. Allen tract?"

The defendant moved for a new trial on nearly all of the
statutory grounds. The motion was denied and judgment
was entered upon the verdict, from which the defendant has
appealed.

The appellant's brief takes a wide range, both in assign-
ments of alleged error and in their discussion, but it seems to
us that the whole case turns upon the propriety of the court's
action in refusing permission to file the second amended com-
plaint. The vital questions involved, the solution of which

must be determinative of the case, may be reduced to the following:    (1)   Was the written agreement of October 14, 1910, a complete agreement on its face such as to preclude evidence of an oral contemporaneous agreement as tendered in the proposed amended answer?    (2)   Would the parol agreement, proof of which was tendered by the proposed amendment, be supported by sufficient consideration in any event?    (3)   Did the court abuse its discretion in denying the appellant's motion for a new trial?

I.   It may not be amiss, at the risk of stating a truism, to premise the discussion of the first of these questions with the observation that the agreement cannot be called incomplete or ambiguous merely because it does not stipulate concerning every possible contingency which might arise.   It is sufficient, as a complete contract, if it stipulates fully and definitely concerning the things which, on its face, it contemplates.   When the admitted facts as to the situation of the parties and the subject-matter are considered in connection with the admissions contained in the agreement itself, it seems plain that the contract here in question was a complete and unambiguous contract in itself.   The admitted subject-matter of the agreement was the money which had been used by the bank in payment of a part of the mortgages on the twelve-acre tract conveyed to the bank in payment of the E. M. Allen notes.   It was admitted that the writing was drawn up by the bank's attorney at the instance of the bank's president.   In the agreement itself it is admitted that the respondent claimed the sum of $3,000 used by E. M. Allen and wife in certain transactions with the bank, and that E. M. Allen and wife acknowledged the fact that the money so used was the property of the respondent.   There is no intimation in the contract that the bank disputed this fact.   On the contrary, it is admitted by the bank that the twelve acres of land was its property and the bank further admitted a willingness that the $3,000 be paid to the respondent out of the proceeds of the sale of that property, provided a sale could

be made within one year for $15,000 net. Then follows the agreement that, in case of such sale, the bank will pay or cause to be paid to the respondent $3,000 with eight per cent interest and time is declared to be of the essence of the contract. These admissions and these stipulations carry the necessary implication that the bank then made no claim that the money so used did not, in fact, belong to the respondent, or that it was so used with the respondent's consent. The clear purpose of the contract was to extend to the bank one year's time in which to pay a claim which it did not dispute, but tacitly admitted. The contract is complete on its face and formal in its terms. It is inconceivable that the parties, and especially the bank, would have omitted from the writing, prepared at its instance and by its attorney, the one vital contemporaneous agreement touching the very existence of the subject-matter. To admit parol evidence of a contemporaneous agreement that the respondent should forfeit all claim to the $3,000 in case the land should not be sold within the year on the terms mentioned, would be contrary to the universal rule that all antecedent and contemporaneous verbal negotiations are merged in the written instrument and that parol evidence thereof is inadmissible to enlarge, vary or contradict the writing.

"The general rule is that parol evidence is not admissible to supply, contradict, enlarge or vary the words of a written contract, and when a contract is reduced to writing all matters of negotiation and discussion of the subject antecedent to the writing are excluded, being merged in the written instrument." *Ross v. Portland Coffee & Spice Co.*, 30 Wash. 647, 71 Pac. 184.

See, also, *Gordon v. Parke & Lacy Machinery Co.*, 10 Wash. 18, 38 Pac. 755; *Newell v. Lamping*, 45 Wash. 304, 88 Pac. 195; *Anderson v. Mitchell*, 51 Wash. 265, 98 Pac. 751. It is a universal rule that the written contract itself must be resorted to as the source of authority for receiving parol evidence, and where, as here, the contract shows a deliberate agreement complete in itself and formally executed,

parol evidence to enlarge its scope or vary its terms is never admissible. *Gordon v. Parke & Lacy Machinery Co., supra.* In each of the decisions of this court cited by the appellant, the writing was either incomplete on its face (*Interstate Engineering Co. v. Archer*, 64 Wash. 629, 117 Pac. 470; *Kleeb v. McInturff*, 62 Wash. 508, 114 Pac. 184; *Cerini v. Chicago, Milwaukee & Puget Sound R. Co.*, 71 Wash. 310, 128 Pac. 666), or the parol evidence related to matters independent of, or collateral to, the subject-matter of the writing. *Roebling's Sons Co. v. Washington Alaska Bank*, 56 Wash. 102, 105 Pac. 174; *Welever v. Advance Shingle Co.*, 34 Wash. 331, 75 Pac. 863. Permission to amend was properly refused.

II. Even assuming that the written agreement might be considered as incomplete, the parol contract, proof of which was tendered, would in the light of the evidence, be without adequate consideration. The only semblance of evidence that any part of the money deposited on March 18, 1910, in the respondent's name was not his, was the testimony of the bank's president that E. M. Allen then claimed to own $3,000 of it and further claimed the right to use all of it. This representation was flatly denied by E. M. Allen, who was corroborated by the deposit slip then made, and by the statement of the bank made to the respondent on April 6, admitting that he then had on deposit in the bank the sum of $5,855.15. Even had E. M. Allen admitted making the claim of ownership, and admitted authorizing the bank to use the money, that admission would not have been competent evidence to bind the respondent. It is elementary that the fact of agency cannot be established, nor the authority of the agent proved, by the declarations of the alleged agent in the absence of the supposed principal. *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904; *Western Security Co. v. Douglass*, 14 Wash. 215, 44 Pac. 257; *Comegys v. American Lumber Co.*, 8 Wash. 661, 36 Pac. 1087.

Much stress is laid upon the letter from the respondent while in Alaska to E. M. Allen, but there was uncontradicted evidence that the letter was written in response to a letter from E. M. Allen, asking for a loan and offering the E. M. Allen land as security, that the security was never furnished and that the loan was never made, nor the matter further pursued. This letter was wholly insufficient to establish any right in E. M. Allen to use the money or to authorize the bank to use it. Both E. M. Allen and the respondent denied that E. M. Allen owned any of the money or any interest in the land of which it was the proceeds, or had any authority to use the money or any part of it. As we view the evidence, it conclusively establishes the fact that, when the written agreement was signed, the respondent was a depositor with the bank to the extent of $3,000, and was entitled to payment of that sum on demand, and that the appellant was bound to make the payment. There was no evidence that the brother, E. M. Allen, then owed the bank anything, and, even if it be conceded that he did, there is no evidence whatever that the respondent agreed to pay his debt. Such an agreement would, of course, have to be in writing to escape the ban of the statute of frauds. On these facts, the only valid consideration of the written contract to extend the time of payment was the agreement of the bank to pay interest on the deposit. There was absolutely no consideration, and the proposed amendment pleaded none, for an agreement on the respondent's part to forfeit the $3,000 on any contingency or to look to the land alone for its payment.

"The rule is elementary that neither the promise to do nor the actual doing of that which the promisor is by law or subsisting contract bound to do is a sufficient consideration to support a promise in his favor." *Esterly Harvesting Mach. Co. v. Pringle*, 41 Neb. 265, 59 N. W. 804.
See, also, *Allen v. Plasmyere*, 3 Neb. (Unof.) 187, 90 N. W. 1125; *Parrot v. Mexican Cent. R. Co.*, 207 Mass. 184, 93 N. E. 590, 34 L. R. A. (N. S.) 261.

There was no such doubt as to the respondent's right to the money as to make a compromise a sufficient consideration for a contingent waiver of that right. *Fire Insurance Ass'n v. Wickham*, 141 U. S. 564; *Mulholland v. Bartlett*, 74 Ill. 58. In any view of the matter, the court committed no error in the refusal to permit the amendment and in refusing to admit evidence of a parol agreement to forfeit.

III. The motion for a new trial was based mainly upon alleged errors of law in the refusal to admit certain evidence, alleged errors in the court's instructions, and alleged misconduct of the jury. What we have said with regard to the law of the case sufficiently disposes of the matters relating to the admission of evidence. Only three of the instructions given by the court appear in the record. These are numbered 17, 18 and 20. Standing alone, they do not cover, nor purport to cover, the whole law of the case. They are, however, unobjectionable as applied to the phases of the case to which they are manifestly directed. Since none of the other instructions are set out in the record, we must assume that they correctly covered the law of the case in other particulars.

The appellant, in support of the motion for a new trial, sought to show misconduct of the jury by the affidavits of certain of the jurors. These affidavits were to the effect that the jurors, in considering the special interrogatory as to the appellant's knowledge when he signed exhibit "A" referred to in the interrogatory, mistook the letter written by the respondent while in Alaska to his brother at Wenatchee for exhibit "A" instead of the written agreement of October 14, and that, but for such mistake, these jurors would have answered the interrogatory in the affirmative instead of the negative. It is manifest that the matters set forth in these affidavits are matters inhering in the verdict. They were not properly admissible to impeach the verdict. *Sexsmith v. Brown*, 61 Wash. 164, 112 Pac. 337; *Ralton v. Sherwood*

*Logging Co.,* 54 Wash. 254, 103 Pac. 28; *Maryland Casualty Co. v. Seattle Elec. Co.,* 75 Wash. 430, 134 Pac. 1097. We cannot say that the court abused its discretion in denying the motion for a new trial.

The judgment is affirmed.

CROW, C. J., MAIN, and MORRIS, JJ., concur.