[No. 27637.   Department Two.   December 29, 1939.]

SEARS, ROEBUCK AND COMPANY, *Appellant,* v. GEORGE NICHOLAS, *Respondent,* GEORGE ATKINS, *Defendant.*[1]

*H. N. Martin,* for appellant.

BEALS, J.—Plaintiff, Sears, Roebuck and Company, is a corporation authorized to do business in the state of Washington, selling goods, wares, and merchandise of various sorts.   Defendant George Nicholas is the

[1]Reported in 97 P. (2d) 633.

owner of a two-story frame building in the town of Republic, Ferry county, using the street floor for store purposes. December 31, 1936, Mr. Nicholas leased the upper story of the building to defendant George Atkins, who furnished the same and for some time operated the upper floor as a rooming house.

During the month of March, 1937, defendant Atkins entered into a written agreement with defendant Nicholas, whereby the lease between the parties was terminated and all liability thereunder mutually released. The agreement further provided for the payment of one hundred dollars from Nicholas to Atkins, the latter selling to Nicholas all the furniture which he owned on the premises, Nicholas assuming and agreeing to pay three specified accounts due from Atkins, the amounts due two creditors being stated, the sum due the other creditor not being set forth. Pursuant to the agreement, Atkins executed a bill of sale, bearing date the same day as the agreement, conveying specified personal property to Nicholas, the bill of sale having been promptly filed for record. The written agreement between the parties made no mention of any amount due from Atkins to Sears, Roebuck and Company.

Later plaintiff sued George Nicholas and George Atkins, jointly, alleging that plaintiff had sold to Atkins a large amount of personal property, consisting of house furnishings, which Atkins had placed in the building owned by defendant Nicholas; that Atkins owed plaintiff, on account of the goods so purchased, $316.42; that defendant Nicholas purchased the personal property from Atkins and, as part of the consideration therefor, agreed with Atkins to pay the balance due plaintiff; plaintiff praying for judgment against defendants and each of them for the amount of its claim.

Defendant Nicholas answered the complaint, denying the material allegations thereof and particularly that he was indebted to plaintiff in any amount. He admitted that he purchased some personal property from Atkins, and pleaded the agreement and bill of sale above referred to, further alleging that he never agreed with Atkins, or any person, to pay any amount to plaintiff. Plaintiff replied to the affirmative matter contained in the answer of defendant Nicholas.

Defendant Atkins answered the complaint, admitting that he had purchased property from plaintiff, but denying that he was indebted to plaintiff, for the reason that Nicholas had purchased from Atkins the personal property and had agreed to pay any and all obligations then outstanding, including plaintiff's claim.

The action was tried to the court, sitting with a jury, and resulted in a verdict in plaintiff's favor. Defendant George Nicholas moved for judgment in his favor notwithstanding the verdict, or in the alternative for a new trial; and, after argument, the trial court granted both of these motions, later entering judgment of dismissal in favor of defendant Nicholas notwithstanding the verdict. From this judgment and from the alternative order granting a new trial, plaintiff has appealed.

Appellant assigns error upon the granting of the motion made by respondent Nicholas for judgment in his favor notwithstanding the verdict and upon the dismissal of the action as to that respondent. Error is also assigned upon the entry of the order granting a new trial, that order to become effective if this court should reverse the judgment which the trial court entered.

Respondent has filed no brief in this court, and the matter was submitted on appellant's brief, without argument. It nowhere appears that appellant or de-

fendant Atkins, either before, during, or after the trial, made any attempt to reform the agreement above referred to, dated March 22, 1937, between respondent and defendant Atkins.

On the trial, over respondent's objection, defendant Atkins was permitted to testify that respondent agreed to pay all of Atkins' indebtedness in connection with the leased premises, as part of the consideration for the transfer to respondent by Atkins of the furniture and for the execution of the agreement of March 22d. Neither on direct nor cross-examination did the witness testify that the account he owed appellant was discussed with respondent. The burden of Atkins' testimony was that respondent "would take over all the indebtedness," and that respondent knew that the witness had purchased merchandise from appellant. In response to the question by the court: "Did you tell him you owed Sears, Roebuck this money?" the witness answered: "Not exactly. He agreed to take over all the indebtedness." Atkins, on cross-examination, testified that he had mentioned to respondent the fact that he had bought some articles from appellant on easy payments, but he did not remember the date of the conversation.

While the case was tried to a jury, the testimony is to be considered by the court in connection with consideration of the authorities discussed later.

Another witness testified that respondent had stated in his presence that he was assuming the debts for the apartments, and that he would pay the witness, who was one of the creditors mentioned in the agreement; and that respondent later did pay the witness the amount due him, in accordance with the agreement. This witness knew nothing concerning any particular accounts, save his own bill, which respondent agreed to pay.

It is not contended that any contract of conditional sale or otherwise between appellant and defendant Atkins was ever filed for record in the office of the auditor of Ferry county.

It is undoubtedly the law of this jurisdiction that, if A, for a valuable consideration, makes a promise to B to pay B's debt to C, C may maintain an action in his own name against A alone, upon the latter's contract with B. *United States Fidelity & Guaranty Co. v. Western Seafood Co.*, 190 Wash. 200, 67 P. (2d) 892, and cases cited therein.

The question to be here determined is whether, upon the record, the written agreement between respondent and defendant Atkins is controlling, or whether appellant can show by oral testimony that respondent and Atkins actually orally agreed that respondent should pay the amount due from Atkins to appellant. It is not contended that respondent ever had any dealings whatsoever with appellant, or that he made directly to or with appellant any promise or agreement whatsoever.

Appellant does not rely upon the written contract between the parties above referred to, but seeks to recover upon an alleged prior oral contract between respondent and Atkins, which was not included in the written agreement. Appellant argues that it does not attempt to vary, by parol testimony, the terms of the written contract; nor does it seek to reform the written contract, upon the ground of fraud or mistake.

Under the common law, it is the general rule that, when parties enter into a formal written contract, it is held to embrace all the agreements between the parties in connection with the subject matter of the contract. The rule is well stated in 17 C. J. S. 872, § 381, as follows:

"A rule of the common law, enacted into statute in some jurisdictions, is that in the absence of fraud a written contract merges all prior and contemporaneous negotiations on the subject, together with all prior oral contracts, and together with and including antecedent correspondence and prior written memorandums; but this is in effect a statement, in different form, of the rule excluding evidence of prior or contemporaneous oral agreements to contradict or to modify a written contract . . . , based on the presumption that, in the absence of accident, fraud, or mistake, the whole engagement of the parties is expressed in the writing."

In 20 Am. Jur. 958, § 1099, the rule is stated as follows:

"It is a general principle that where the parties to a contract have deliberately put their engagement in writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the entire engagement of the parties and the extent and manner of their undertaking have been reduced to writing; in other words, the parol agreement is merged in the written agreement and all parol testimony of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent;"

subject to an exception stated on p. 988, § 1135, as follows:

"A well-settled exception to the parol evidence rule exists where the entire agreement has not been reduced to writing—that is, where there is what a learned writer on the law of evidence calls 'a partial integration.' In such a case parol evidence to prove the part not reduced to writing is admissible, although it is not admissible as to the part reduced to writing."

In determining whether or not a written contract embraces the entire agreement between the parties, the courts have differed as to the scope of the inquiry. In 20 Am. Jur. 990, § 1136, the rule is stated as follows:

"According to one line of authorities, it must be apparent that the instrument in writing contains but a part of the agreement. . . . If the writing contains within itself all that is necessary to constitute a contract, it is not competent to show by oral evidence that it does not state all of the terms of the agreement, in the absence of an averment that there was an omission or mistake made in reducing the agreement to writing."

While this doctrine has been very generally followed, some courts have held that the intent of the parties controls; and that, in determining their intent, the nature of the alleged oral agreement not embodied in the contract, and the matter of whether or not such an agreement would ordinarily have been embodied in the written instrument had the parties in fact made such an agreement, are entitled to great weight.

In 3 Williston on Contracts 1834, § 638, is found the following:

"The test of admissibility is much affected by the inherent probability of parties who contract under the circumstances in question, simultaneously making both the agreement in writing which is before the court, and also the alleged parol agreement;"

and as an illustration of the application of this test, the following example is given [p. 1838, § 639]:

"A written promise to pay $50 is not in terms contradicted by an oral promise to pay $25 more, but the natural implication from the written promise is irresistible that $50 is the whole cash payment which the promisor is to make. This implication arises because as a matter of actual practice, one who was intending to promise $75 would put his promise in the form of a single promise to pay that sum, rather than in that of a written promise to pay $50 and a separate agreement to pay $25 in addition."

As to a collateral contract, the following text from 20 Am. Jur. 992, § 1140, should be considered:

"Another exception to the parol evidence rule which is similar in many respects to that of partial integration is known as the 'doctrine of collateral contract.' A separate and independent verbal contract between the parties to a written contract may be proved by parol. The parol evidence rule does not affect a purely collateral contract distinct from, and independent of, the written agreement.

"The limitations upon the doctrine of collateral contract are much the same as those which govern in the case of partial integration. It is sometimes held that the collateral contract must relate to a subject distinct from that to which the written contract applies. . . . To permit an oral agreement to vary a written contract, it must be collateral, must not contradict express or implied conditions of the written one, and must be one which the parties could not reasonably be expected to embody in the writing. The matter collateral to the written agreement which may be proved by parol must not change the terms of the contract or increase or diminish the liabilities of the parties."

Several decisions of this court are important in connection with appellant's argument. In the case of *Thomson & Stacy Co. v. Evans, Coleman & Evans,* 100 Wash. 277, 170 Pac. 578, it was held that a written contract for the sale of grain sacks was not ambiguous or incomplete merely because it did not by its terms designate the place whence the sacks were to come, it being held that parol evidence that the sacks were to be shipped from British Columbia was inadmissible. In the course of the opinion, this court said:

"Moreover, the parties to every written contract, which on its face imports a complete legal obligation, are presumed to have introduced into it every material item and term. Silence on a point which might have been embodied does not open the door to parol evidence to include it.

" 'According to the better view the only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing

itself. If it imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,—it is to be presumed that the parties introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed. The rule forbids to add by parol when the writing is silent, as well as to vary where it speaks.' 3 Jones, Blue Book of Evidence, pp. 182, 183, § 440."

In the case of *Wick Co. v. DuBarry,* 159 Wash. 380, 293 Pac. 447, the subject matter of the litigation was a written consignment contract for the delivery and sale of pianos. It was held that, as the contract was silent as to the territory within which the consignee was to sell the pianos, the contract was incomplete, and oral testimony could be introduced tending to prove that the consignee was to have exclusive sale rights in a designated territory.

In the case of *Hockersmith v. Ferguson,* 63 Wash. 581, 116 Pac. 11, it was held that an alleged contemporary oral agreement was not collateral, but was, in fact, a component part of an original lease between the parties, and, not having been included therein, could not be proven by the party seeking to establish the oral agreement. The following language is found in the opinion:

"It is conceded in this case that, after negotiations which led up to it, the lease in question was made. It bears upon its face evidence of careful preparation, and shows that the parties to it had considered the many questions in regard to the property. . . .

"If there was an agreement by the lessor prior to this writing, to change or repair the building during the term of the lease, that agreement was as much a part of the contract of lease as any other, and should have been incorporated in it. It was clearly not a collateral agreement under the rule first above stated.

If the agreement was made as alleged and attempted to be proved, it was a part of the contract of lease, and it is strange that so important a matter should have been left out of the written agreement."

The language quoted is pertinent here, as three accounts were mentioned in the contract. If respondent agreed to pay other accounts, it is strange that they were not mentioned.

In the case of *Union Machinery & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183, a complicated situation was considered, which is somewhat analogous to that now before us. It appeared that the brothers England had borrowed money from Darnell to finance logging operations, giving Darnell as security a bill of sale of timber, reserving, however, the right to remove certain logs. The England brothers became indebted to the plaintiff machinery company. The Englands failed to pay their indebtedness to Darnell when the same became due, and the latter then took a mortgage upon John England's house, the Englands, Darnell, and the machinery company entering into an agreement conferring upon the latter the right to sell designated log booms, the Englands and Darnell joining in a chattel mortgage to the machinery company covering described timber. Later, the machinery company sued Darnell, claiming that Darnell, when he received the mortgage from John England, as part of the consideration therefor, promised England to pay the machinery company one thousand dollars, to apply on the Englands' indebtedness, the machinery company suing as a third party beneficiary.

On the trial, the plaintiff was permitted to introduce the testimony of John England, to the effect that Darnell had promised to pay one thousand dollars to the machinery company. Darnell denied making any such promise, contending that the mortgage stated the

entire agreement, and that the later mortgage and contract with the machinery company also stated his entire obligation. Plaintiff was awarded judgment before the superior court, and on appeal by Darnell, the judgment was reversed.

The respondent contended that the real consideration for a written contract can always be shown; that Darnell's promise to pay the one thousand dollars was an additional consideration for the mortgage; and that evidence concerning the same was, for that reason, admissible. After discussing cases concerning an expressed consideration in a deed of real property or bill of sale of personalty, the court held that, as the primary purpose of a mortgage was to secure payment of a debt, not to pass title, the recital of the amount of the debt was as

". . . invulnerable to parol attack as any other of the terms of the instrument, so long as the integrity of the instrument is not assailed for fraud nor a reformation sought for mistake."

Considering the questions presented, the court also said:

"But it does not follow that every such promise may be proved by parol evidence. If the promise is asserted to have been made as a part of a transaction which is evidenced by a formal written contract complete and unambiguous upon its face, it is elementary that, as between the parties to the writing, parol evidence would be inadmissible to prove any additional promise which would tend to contradict, vary or enlarge the terms, scope or purpose of the written contract. *Ross v. Portland Coffee & Spice Co.*, 30 Wash. 647, 71 Pac. 184; *Allen v. Farmers & Merchants Bank of Wenatchee*, 76 Wash. 51, 135 Pac. 621. The same rule excluding parol testimony which applies as between the parties to a written contract applies with like force to a third person whenever he claims as a beneficiary under a contract, bases his claim upon it,

or seeks to assert rights which originate in the contractual relation created by it. All rights primarily arising from the negotiations on which the written instrument rests, by whomsoever asserted, are merged in the writing. The fountain cannot rise higher than its source. . . .

"Where a deed recited the consideration as the payment of a certain sum of money and the assumption by the grantee of certain specifically described debts of the grantor, it was held that the statement of the consideration was contractual and that parol evidence was not admissible to show the assumption of other debts as an additional consideration. . . .

"We have been cited to no authority, and know of none, holding that, where a mortgage is given to secure a certain indebtedness specifically described therein, the character and components of which are known and admitted, it is competent, without any allegation of fraud or mistake, to prove that, by a contemporaneous parol agreement, it was intended to secure a debt of a wholly different origin and character, or an additional sum to be advanced by the mortgagee as an additional consideration for the mortgage. Much less is it competent to prove that, by such an oral agreement, an additional sum was to be paid as an additional consideration without any intention that it should be secured by the mortgage. Such proof in either case would not be proving the consideration merely, but varying and enlarging the contract by adding new terms and conditions and creating new burdens."

It was held that the trial court had erred in admitting parol testimony concerning the alleged oral agreement.

While in the case at bar, Atkins gave respondent a bill of sale, that was merely pursuant to the primary contract, upon which the basic liabilities of the parties depend.

In the case of *Asher Bros. etc. Co. v. General Illuminating Co.*, 193 Wash. 105, 74 P. (2d) 495, we said:

"But this court has long been committed to the rule that, where a written agreement purports to cover the

entire subject matter with respect to which the parties are contracting, evidence of a contemporaneous or prior oral agreement, contradicting or altering the terms of the writing, is inadmissible, in the absence of fraud or mutual mistake."

Under the authorities, the trial court erred in admitting parol evidence as to the alleged oral promise on the part of respondent Nicholas to pay Atkins' debt to appellant. No attempt having been made to reform the contract upon the ground of fraud or mistake, it should have been held, on the trial, that the written agreement expressed the entire contract between respondent and Atkins.

The trial court, then, did not err in granting respondent's motion for judgment in his favor notwithstanding the verdict, and the judgment entered by the trial court dismissing the action is accordingly affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.